# R AND R POOL AND PATIO, INC., ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF RIDGEFIELD
## (AC 27828)

DiPentima, Gruendel and Hennessy, Js.

Argued March 14—officially released July 10, 2007

*Robert A. Fuller*, for the appellants (plaintiffs).

*Patricia C. Sullivan*, with whom, on the brief, was *Barbara M. Schellenberg*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiffs, R & R Pool & Patio, Inc., Mitchell Ross, David Ross and Philip Ross, appeal from the judgment of the trial court rendered in favor of the defendant, the zoning board of appeals of the town of Ridgefield (board), following the granting of the defendant's motion to strike the complaint. Appeals relating to the plaintiffs' use of their property have been before this court on four previous occasions. In this appeal, the plaintiffs claim that the court improperly determined that the board was not required to review their site plan application within the time constraints delineated in General Statutes §§ 8-7d (b)[1] and 8-3 (g).[2] We affirm the judgment of the trial court.

We initially adopt the comprehensive recitation of facts and procedural history of this court in *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 83 Conn. App. 1, 847 A.2d 1052, cert. denied, 271 Conn. 921, 859 A.2d 580 (2004). "In July, 1990, the board granted Richard Amatulli, a tenant of the property at that time, a variance that permitted him to conduct 'wholesale and retail sales . . . from the [property], unrestricted

---

[1] General Statutes § 8-7d (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for any building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. . . ."

[2] General Statutes § 8-3 (g) provides in relevant part: "Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired. . . ."

as to type of customer or hours of operation, but restricted as to products to be sold. Such wholesale and retail sales shall be limited to oriental rugs, fine furniture and art.' . . . In 1993, the then owners of the property filed an application on behalf of a new tenant, the present corporate plaintiff . . . to operate a warehouse and an office on the property and to conduct retail sales of 'fine outdoor furniture.' The Ridgefield town planning director denied the application, and the board sustained the denial. The board based its decision on the determination that the furniture that the plaintiffs proposed to sell was not the type of merchandise for which the variance had been granted to Amatulli. The owners and the plaintiffs appealed to the Superior Court. The court dismissed the appeal on the ground that the plaintiffs lacked standing, and the owners and the plaintiffs then appealed to this court. We reversed the trial court's judgment in part and remanded the case to that court for a decision on the merits. . . . In 1998, the trial court sustained the plaintiffs' appeal on the ground that the record was devoid of evidence 'to support the board's conclusion that the plaintiffs' furniture is not the "fine furniture" contemplated by the [Amatulli] variance.' . . . The board did not appeal from that decision.

"In July, 1995, while their appeal on their first site plan application was pending in the trial court, the plaintiffs filed a second site plan application, this time for the sale of oriental rugs, fine furniture and art. During the course of the application process, the plaintiffs assured the planning director that they would limit their retail furniture sales to goods that would comply with the Amatulli variance and that they would not sell plastic or mass produced furniture. The first site plan appeal was still pending when, in August, 1995, the planning director approved the plaintiffs' second site plan application. The site plan approval was subject to the condition that 'the limited retail sales will be exactly as

permitted and described in the grant of [the Amatulli variance] and further defined in [the board's memorandum of decision denying the first application for site plan approval].' . . .

"Four months later, and three months after the plaintiffs began selling furniture on the property, the Ridgefield zoning enforcement officer issued a cease and desist order on the ground that the plaintiffs' sales were not permitted under the Amatulli variance and violated the conditions of their site plan approval. The plaintiffs appealed to the board, and the board sustained the zoning enforcement officer's order. In so doing, the board determined that the plaintiffs were in violation of the zoning variance that applied to their property because they 'applied for [s]ite [p]lan [a]pproval for one use . . . and after receiving it . . . put the property to another use.' . . . Specifically, the board noted that the plaintiffs' site plan application 'had been approved for the sale of oriental rugs, fine furniture and art . . . [and] concluded that [t]he outdoor furniture . . . offered for sale at [the plaintiffs' property] does not meet the aforementioned criteria.' . . .

"The plaintiffs appealed to the Superior Court claiming, inter alia, that the term 'fine furniture' was vague and that their rights to due process were violated because they were not told what items of furniture that term did not include. The court heard that appeal at the same time that it heard, on remand, the plaintiffs' appeal from the denial of their first site plan application. In addition to sustaining the plaintiffs' appeal in the first site plan case, as previously detailed, the court dismissed their appeal from the board's decision to sustain the cease and desist order related to the second site plan. In the latter case, the court decided that 'the board's reason for sustaining the order . . . was reasonably supported by the record.' . . . The plaintiffs appealed from that decision.

"We reversed the court's judgment on the basis of the doctrine of collateral estoppel. After the granting of certification, the board appealed to the Supreme Court on the ground that collateral estoppel did not apply because in the trial court's decision in the first site plan case, the court did not determine the definition of the term 'fine furniture' as used in the Amatulli variance. Our Supreme Court agreed with the board's argument, stating that 'the meaning of fine furniture as used in the Amatulli variance was neither litigated by the parties nor decided by the trial court in the site plan case. Therefore, the trial court did not render final judgment on an issue that would preclude the board, under the doctrine of collateral estoppel, from ensuring in the cease and desist case that the plaintiffs' actual use complied with its site plan application to sell fine furniture.' . . . Accordingly, the Supreme Court reversed the judgment and remanded the case to this court with direction to affirm the judgment of the trial court." (Citations omitted.) Id., 3–6.

*R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 83 Conn. App. 1, involved, inter alia, a different aspect of the Amatulli variance, specifically, "whether it allows the plaintiffs to use the exterior of the property for outdoor displays and storage. On December 23, 1998, the plaintiffs filed a third application for site plan approval for specific areas of outdoor displays in which they intended to display a different line of products for sale, i.e., '[f]urniture and furnishings, including the customary related accessories such as cushions, umbrellas, and tableware related to furniture in stock. . . . Spas, hot tubs and pool accessories. . . . Billiard and gaming tables and accessories. . . . Fireplace equipment and grills. . . . Works of art. . . . Christmas and seasonal holiday products.' The planning director denied the application on February 17, 1999. The plaintiffs appealed and, on July 19, 1999, the board

upheld the planning director's decision. The plaintiffs appealed to the Superior Court on numerous grounds. On August 9, 2002, the court sustained the appeal on the ground that there was no substantial evidence indicating that the variance did not include outdoor displays, and because the plaintiffs' proposed use of the property did not constitute a change from Amatulli's use and, thus, they were not required to file a new site plan application. The court reversed the board's decision and directed the board to sustain the plaintiffs' application." Id., 6–7.

On March 19, 2003, this court granted the board's petition for certification to appeal. We determined that "[b]y directing the board to grant the plaintiffs' application, the court's reversal of the board's decision prohibiting outdoor displays had the effect of tacitly approving the sale of specific items that were not permitted under the terms of the variance. Thus, the court's unqualified order directing the board to grant the plaintiffs' site plan application is not consistent with the Supreme Court's ruling [in *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 778 A.2d 61 (2001)] and, accordingly, is overbroad." *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 83 Conn. App. 8. We thus concluded that "once the court decided to reverse the board's decision, it should have gone no further than to sustain the plaintiffs' appeal." Id., 9. We reversed the judgment of the court only as to its order directing the board to grant the plaintiffs' application for site plan approval and remanded the case to the court to remand the case to the board "for further proceedings on the issue of whether the sale of specific items listed in the application is permitted under the Amatulli variance." Id. Our Supreme Court denied the plaintiffs' petition for certification for appeal from that decision. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 271 Conn. 921, 859 A.2d 580 (2004).

On March 11, 2005, the board filed a motion for an order implementing the remand order of this court. The trial court granted the motion and remanded the case to the board on April 4, 2005. On September 15, 2005, the plaintiffs, through their attorney, filed a letter stating that the statutory time period to review the application had expired and that they were due automatic approval of their site plan application. By letter dated September 16, 2005, the board informed the plaintiffs that the site plan application would be addressed at the board's October 19, 2005 meeting.[3] The plaintiffs filed a complaint on October 5, 2005, requesting that the trial court grant a writ of mandamus directing the board to issue a certificate of approval. On November 25, 2005, the board filed a motion to strike the plaintiffs' complaint, which was granted by the court on February 22, 2006. This appeal followed.

The plaintiffs claim that where a zoning board of appeals is the agency reviewing a site plan application, and the board does not decide whether to approve the site plan application within the time limits delineated in §§ 8-7d (b) and 8-3 (g), the applicant is entitled to an automatic approval. They claim, therefore, that the court's granting of the board's motion to strike the mandamus complaint was improper. We disagree.

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review

---

[3] The meeting was held as scheduled, and the board did not approve the items that the plaintiffs proposed to sell. In addition to the present appeal, the plaintiffs filed an administrative appeal from the denial of the site plan application on November 3, 2005, in order "to protect their rights . . . ." That appeal was scheduled for a hearing on May 21, 2007. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, Superior Court, judicial district of Danbury, Docket No. CV-05-4004560-S.

of the court's ruling is plenary. . . . We take the facts to be those alleged in the [pleading] that has been stricken and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 412, 908 A.2d 1033 (2006).

The dispositive issue in this appeal is whether a zoning board of appeals is bound by the statutory time constraints of § 8-7d (b), which provides in relevant part that "whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for any building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. . . ." General Statutes § 8-7d (b). Section 8-3 (g) further addresses the time limitation by providing that "[a]pproval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. . . ."[4] General Statutes § 8-3 (g).

The court issued an order granting the board's motion to strike the plaintiffs' complaint, applying the reasoning of *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 623 A.2d 1007 (1993). In that case, our Supreme Court addressed whether "the 'automatic approval' doctrine applicable to a zoning

---

[4] We agree with the plaintiffs that § 8-7d (b) is the statute applicable to the court's remand to the board in this case. "Section 8-7d (a) sets the time constraints for the rendering of decisions on zoning applications in which a public hearing is required. . . . If no public hearing is required, the time constraints of subsection (b), rather than those of subsection (a), control." *October Twenty-Four, Inc.* v. *Planning & Zoning Commission*, 35 Conn. App. 599, 601–602, 646 A.2d 926 (1994). Because no public hearing was required "for further proceedings on the issue of whether the sale of specific items listed in the application is permitted under the Amatulli variance"; *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 83 Conn. App. 9; § 8-7d (b) controls.

commission that fails to issue timely decisions on site plan or subdivision applications under General Statutes §§ 8-3 (g) and 8-26,[5] also [applies] to a zoning board of appeals that fails to hold a hearing on an appeal under General Statutes § 8-7d (a) . . . ." (Internal quotation marks omitted.) *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 436. The plaintiffs in that case submitted an application for a site plan approval for the construction of an asphalt plant on their property in Colchester. Id., 434–35. The planning and zoning commission held a public hearing and ultimately denied the application. Id., 435. The plaintiffs then filed an application with the zoning board of appeals, "appealing from the denial of [their] site plan application by the [planning and zoning] commission." Id. Shortly after the appeal was filed, the planning and zoning commission determined that asphalt plants were no longer allowed in Colchester, and, after originally having arranged for a public hearing, the zoning board of appeals canceled the hearing because it believed that it no longer had jurisdiction to act on the appeal. Id. The trial court granted the plaintiffs a writ of mandamus "to compel the [zoning board of appeals] to issue a certificate approving their site plan application and be ordered to sustain the appeal filed with it by the plaintiffs." Id., 436. This court "agreed with the trial court that the time requirements of § 8-7d (a) could be satisfied only by the commencement of a public hearing within sixty-five days after the receipt by the [zoning board of appeals] of the plaintiffs' appeal and that the failure of the defendant [zoning board of appeals] to hold such a hearing resulted in the automatic approval of the plaintiffs' site plan application . . . ." Id., 437.

[5] General Statutes § 8-26 requires a planning commission to "approve, modify and approve, or disapprove any *subdivision* or *resubdivision* application" within the time limits in § 8-26d. (Emphasis added.) General Statutes § 8-26d provides, in turn, that "all public hearings shall be held and all decisions made in accordance with the provisions of section 8-7d."

Our Supreme Court reversed that decision. Id., 446. In so doing, it reviewed its earlier decision of *Vartuli* v. *Sotire*, 192 Conn. 353, 472 A.2d 336 (1984), in which the failure of a zoning commission to act within the time constraints of § 8-7d (b) resulted in automatic approval of an application for a coastal management act site plan. Because § 8-7d (b) "contained language requiring the applicant's consent for an extension of the statutory time period . . . [the Supreme Court] reasoned in that case that the language . . . permitted the inference that the time constraints in the statute were mandatory." *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 441. In its analysis of statutory construction, however, the court determined that "[b]ecause §§ 8-3 (g) and 8-26 expressly provide for the automatic approval of applications when a zoning commission or planning commission do not act within prescribed time periods, it can be inferred that had the legislature intended that the failure of a zoning board of appeals to hold a hearing within sixty-five days results in automatic approval, the legislature would have so provided. . . . Moreover, if a mandate for automatic approval is to be inferred from the consent language in § 8-7d (a), that construction would render the specific automatic approval language in §§ 8-3 (g) and 8-26 mere surplusage and such an interpretation has been proscribed by this court." (Citation omitted; internal quotation marks omitted.) Id., 442. The court concluded that "[z]oning boards of appeals do not perform the same functions as zoning commissions. . . . The board's appellate function is not advanced by the substitution of an automatic approval for a decision of an appeal on its merits. . . . [W]e conclude that a zoning board of appeals is not subject to the automatic approval doctrine because it fails to hold a public hearing within the time limits contained in § 8-7d (a)."[6] (Citation omitted.) Id., 445–46.

---

[6] In a footnote, the court stated that *Vartuli* v. *Sotire*, supra, 192 Conn. 353, was "restricted to its facts, i.e., a site plan application to a zoning

We find unavailing the plaintiffs' contention that because *Leo Fedus & Sons Construction Co.* involved subsection (a) and not subsection (b) of § 8-7d, the holding is not controlling under the facts of this case. Despite the plaintiffs' efforts to distinguish the two subsections, we conclude that in this case, the comparison consists of a distinction without a difference. Subsection (a) of § 8-7d involves "all matters wherein a formal petition, application, request or appeal must be submitted to [one of the specified agencies], *and a hearing is required or otherwise held* . . . ." (Emphasis added.) General Statutes § 8-7d (a). In contrast, subsection (b) applies "whenever the approval of a site plan is the only requirement to be met or remaining to be met"; General Statutes § 8-7d (b); that is, when no hearing is required. Both subsections include language that the operative time period in which to act is within sixty-five days. Only § 8-3 (g) contains automatic approval language; it refers to the time limitations of § 8-7d without specifying whether it refers to subsection (a) or (b). Our Supreme Court explicitly held that because the automatic approval language of § 8-3 (g) expressly addresses a zoning commission or planning commission, "it can be inferred that had the legislature intended that the failure of a zoning board of appeals to hold a hearing within sixty-five days results in automatic approval, the legislature would have so provided." *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 442. Therefore, automatic approval under either subsection (a) or subsection (b) of § 8-7d, as applied by § 8-3 (g), is not applicable to a zoning board of appeals.[7]

commission. . . . Both *Vartuli* and *Carr* v. *Woolwich*, 7 Conn. App. 684, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), to the extent that they are inconsistent with this opinion only, are overruled." *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 446 n.7.

[7] The plaintiffs further note that No. 06-20 of the 2006 Public Acts added the following language to § 8-3 (g): "The provisions of this subsection shall apply to all zoning commissions or other final zoning authority of each municipality whether or not such municipality has adopted the provisions

Additionally, the plaintiffs claim that because the case was remanded, the board "was not deciding a variance or an appeal from the [z]oning [e]nforcement [o]fficer, but rather making an independent determination on whether certain categories of furniture were permitted to be sold under the third site plan based upon a variance previously approved by the [b]oard." Inapposite are the cases the plaintiffs cite for the proposition that all agencies to which a case is remanded, that merely have to make an independent determination, are required to make a decision within sixty-five days. See *Gervasi* v. *Town Plan & Zoning Commission*, 184 Conn. 450, 440 A.2d 163 (1981); *Marandino* v. *Planning & Zoning Commission*, 21 Conn. App. 421, 573 A.2d 768 (1990). Those cases involved a remand order to a commission rather than a zoning board of appeals, and they were thus bound by the sixty-five day requirement to decide, the failure of which resulted in an automatic approval under § 8-26. The plaintiffs claim that the board was acting in a different capacity because it merely had to decide whether the site plan application fell within the Amatulli variance. Our Supreme Court clearly has stated, however, that a zoning board of appeals is not subject to automatic approval; see *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 446; and we decline to apply gradations on the basis of the board's proposed function.

The judgment is affirmed.

In this opinion the other judges concurred.

of this chapter or the charter of such municipality or special act establishing zoning in the municipality contains similar provisions." Public Acts 2006, No. 06-20, § 1. They aver that the amendment evidences "[t]he intent [of the legislature] to allow site plan review by a zoning board of appeals, in addition to the zoning commission or other agencies or officials . . . ." Considering the date of the adoption of the public act, May 2, 2006, we decline the plaintiffs' invitation to speculate as to the legislature's intent. See General Statutes § 1-2z.