R AND R POOL AND PATIO, INC., ET AL. *v.*
ZONING BOARD OF APPEALS OF THE
TOWN OF RIDGEFIELD
(AC 32105)

Gruendel, Robinson and Bear, Js.

Argued March 10—officially released June 7, 2011

*Patricia C. Sullivan*, with whom was *Barbara M. Schellenberg*, for the appellant (defendant).

*Robert A. Fuller*, for the appellees (plaintiffs).

*Opinion*

BEAR, J. The defendant, the zoning board of appeals of the town of Ridgefield (board), appeals from the judgment of the Superior Court sustaining in part the appeal of the plaintiffs, R & R Pool & Patio, Inc., Mitchell Ross, David Ross and Philip Ross. On appeal, the board claims that the court improperly rejected its definition of the term "fine furniture," as that term was set forth in a variance pertaining to the plaintiffs' property, and improperly substituted its own definition. We conclude that the court properly determined that the board's definition of that term was arbitrary and illegal; however, we further conclude that the court's definition of

that term also was improper. Accordingly, we affirm in part and reverse in part the judgment of the Superior Court.

The following facts as found by the trial court are relevant to this appeal.[1] "The plaintiffs' property is located at 975 Ethan Allen Highway in Ridgefield. The property is located in a B-2 zone in which retail uses are not permitted under the Ridgefield zoning regulations. In July, 1990, Richard Amatulli, a tenant of the property at the time, obtained site plan approval to conduct a wholesale oriental rug operation on the property. On November 5, 1990, the board granted Amatulli's application for a variance to conduct retail sales on the property. The variance provided: '[T]his action permits wholesale and retail sales to be conducted from the premises, unrestricted as to type of customer or hours of operation, but restricted as to the products to be sold. Such wholesale and retail sales shall be limited to oriental rugs, fine furniture and art.' . . .

"On July 2, 1993, the owners, on behalf of their new tenant, R & R Pool & Patio, Inc., filed an application for site plan approval with the Ridgefield planning director proposing the use of the property for warehouse, office and retail sale of fine outdoor furniture. This application was denied. One of the reasons given for the denial was that the merchandise that the tenants were planning to sell was not the 'fine furniture' contemplated by the board in its decision on the Amatulli variance. The owners and the plaintiffs appealed from the decision to the board, which upheld the planning director's decision. On February 24, 1994, the owners of the property and

[1] For more detailed background information on the history of this case, see *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 102 Conn. App. 351, 925 A.2d 417, cert. denied, 284 Conn. 908, 931 A.2d 265 (2007); *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 83 Conn. App. 1, 847 A.2d 1052, cert. denied, 271 Conn. 921, 859 A.2d 580 (2004); see also *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 778 A.2d 61 (2001).

the plaintiffs appealed to the Superior Court, alleging that the board's decision on the site plan application was arbitrary, illegal and an abuse of discretion. The . . . court dismissed the appeal for lack of standing on the ground that the property owners were not the applicants for the site plan approval. The property owners and the plaintiffs then appealed the case to [this court]. While that was pending, the owners conveyed title to the property to the plaintiffs. Upon review, [we] reversed the judgment of the [Superior Court] and remanded the case for a determination on the merits. On remand, the . . . court, *Stodolink, J.*, sustained the appeal and concluded that the record contained no evidence to support the board's conclusion that the furniture at issue was not the type of 'fine furniture' contemplated by the Amatulli variance.

"On July 27, 1995, while the appeal of the first site plan application was pending in the Superior Court, the plaintiffs submitted a second site plan application to the planning director, seeking approval for the retail and wholesale sales of oriental rugs, fine furniture and art. In that application the plaintiffs provided a 'statement of proposed uses' for the property, along with numerous letters to the planning director. The plaintiffs stated that the 'property will be used in accordance with the variance granted by the [board] in App. #90-099 on November 5, 1990,' the original Amatulli variance. The plaintiffs also stated that the products to be sold on the premises would be limited to '[r]etail and wholesale sales of oriental rugs, fine furniture and art. . . . The products will be of high end quality, well styled and up-scaled products . . . . There will be no plastic furniture, no mass produced assembly line type of furniture, and no athletic equipment such as swing sets. R & R [Pool & Patio, Inc.,] will not be selling the type of furniture which is customarily sold in discount stores. Instead, the furniture will be of the high type and caliber

which is customarily sold in high quality furniture stores throughout the United States. A consumer could expect to find the same products in stores on Fifth Avenue or Madison Avenue in New York City and similar states in different parts of the country.' . . . Based upon these assurances, the planning director approved the plaintiffs' second site plan application.

"In September, 1995, the plaintiffs began retail sales of furniture on the property. Soon after, the Ridgefield zoning enforcement officer issued a cease and desist order ordering the plaintiffs to remedy or discontinue conducting retail sales in a B-2 zone, retail sales not allowed under the Amatulli variance, retail sales not presented during the site plan process and sales that specifically violate the conditions of the plaintiffs' site plan approval. On January 5, 1996, the plaintiffs appealed the cease and desist order to the board, which upheld the issuance of the order. The board stated the plaintiffs had 'applied for site plan approval for one use, and after receiving it . . . put the property to another use.'

"On May 2, 1996, the plaintiffs appealed from the board's decision on the cease and desist order to the Superior Court. The plaintiffs asserted that the board's decision was arbitrary and illegal in that the Amatulli variance ran with the land and the board could not modify it, the term fine furniture was vague and involved a matter of personal taste, and the plaintiffs were denied due process because they were not informed which items did not constitute fine furniture. The . . . court, *Stodolink, J.*, upheld the board's decision, concluding that the board's reason for sustaining the order was reasonably supported by the record. Judge Stodolink issued his decision on both the site plan appeal and the cease and desist order appeal on the same day, October 20, 1998.

"[We] then granted the plaintiffs' motion to take judicial notice of the site plan appeal and concluded that the trial court had determined that the Amatulli variance could not be construed to limit the kind of furniture sold on the property. Because the board had failed to appeal from the trial court's judgment in the [first] site plan appeal, [we] concluded that the board was precluded under the doctrine of collateral estoppel from asserting that 'fine furniture,' as it appeared in the Amatulli variance, meant something finer than ordinary furniture. [This court] reversed the . . . judgment [of the Superior Court] on the cease and desist appeal, concluding that the plaintiffs' use of the property conformed to the Amatulli variance as defined by the [Superior Court].

"The Supreme Court then heard the case and reversed and remanded it back to [this court], stating that [this court] improperly applied the doctrine of collateral estoppel. *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, [257 Conn. 456, 475, 778 A.2d 61 (2001)]. The Supreme Court stated that because the meaning of 'fine furniture' was neither litigated by the parties nor decided by the [Superior Court] in the site plan case, 'the [Superior Court] did not render final judgment on an issue that would preclude the board, under the doctrine of collateral estoppel, from ensuring in the cease and desist case that the plaintiffs' actual use complied with its site plan application to sell fine furniture.' Id.

"On December 28, 1998, the plaintiffs filed a third application for site plan approval of specific products to be sold and specific areas for outside display. The specific products proposed in the site plan were as follows: '1. Furniture and furnishings, including the customary related accessories such as cushions, umbrellas, and tableware related to furniture in stock . . . 2. Spas, hot tubs and pool accessories . . . 3. Billiard and gaming tables and accessories . . . 4. Fireplace equipment

and grills . . . 5. Works of art . . . 6. Christmas and seasonal holiday products.' . . . On February 17, 1999, the planning director denied the application. On February 25, 1999, the plaintiffs filed an appeal to the board, and the board upheld the decision of the planning director. The plaintiffs appealed from the denial to the Superior Court. On August 9, 2002, the court sustained the appeal because there was no substantial evidence indicating that the variance did not include outdoor displays, and because the plaintiffs' proposed use of the property did not constitute a change from Amatulli's use, and, thus, they were not required to file a new site plan application. In sustaining the appeal, the court reversed the board's decision and directed the board to approve the plaintiffs' application. . . .

"On appeal, [we] reversed the judgment 'only as to the [Superior Court's] order directing the board to grant the plaintiffs' application for site plan approval' and remanded the case to the [Superior Court] with direction to remand the matter to the board for further proceedings on the issue of whether the sale of the specific items listed in the application is permitted under the Amatulli variance. *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, [83 Conn. App. 1, 847 A.2d 1052, cert. denied, 271 Conn. 921, 859 A.2d 580 (2004)]. [We] reasoned that 'once the [Superior Court] reversed the board's decision to deny the plaintiffs' application, there was not, as a matter of law, a single conclusion that the board reasonably could reach as to the plaintiffs' application. Numerous sale items are incorporated in the plaintiffs' most recent site plan application. The board has discretion to determine the specific items that are permitted by the Amatulli variance. Thus, once the court decided to reverse the board's decision, it should have gone no further than to sustain the plaintiffs' appeal. The court's overbroad order directing the

board to grant the plaintiffs' application deprived the board of its discretionary authority.' Id., 9.

"The board, upon remand from the Superior Court, at a meeting on October 17, 2005, considered the list of six items in the plaintiffs' site plan application. The transcript of the meeting reveals that the board attempted to derive a workable definition of 'fine furniture.' . . . The board had access to photocopies of the original photos submitted with the Amatulli application . . . and made use of them in their deliberations. A board member indicated a desire to understand the 'legislative history' of the variance grant, but only in passing, and made no reference to the transcript. . . . A board member acknowledged the existence of the Raymond Ross letter of August 15, 1995 . . . but indicated that it was 'not theoretically part of the record' and did not consider it further. The board also had access to a historical, procedural summary prepared by board clerk Marjorie Tippet . . . but no reference to it appears in the transcript of the board's deliberations. Over the course of the deliberations, the board developed the definition of 'fine furniture' to be furniture that is 'one of a kind, hand-crafted, not mass produced, that may appreciate in value.' . . . Based on that definition, the board took up each of the six proposed categories of products and rendered the following decision: '1. Furniture and furnishings, including the customary related accessories such as cushions, umbrellas, and tableware related to furniture in stock would be permitted only to the extent that each such item was "one of a kind, hand-crafted, not mass produced and capable of appreciating in value"; 2. Spas, hot tubs and pool accessories are not permitted; 3. Billiard and gaming tables and accessories would be permitted only to the extent that each such item was "one of a kind, hand-crafted, not mass produced and capable of appreciating

in value"; 4. Fireplace equipment and grills are not permitted; 5. Works of art are permitted; 6. Christmas and seasonal holiday products are not permitted.' . . .

"The plaintiffs appealed from the decision of the board to the Superior Court. On June 19, 2007, the court, *Mintz, J.*, after determining that four of the five board members who had voted on the decision had not heard the entire case and had not familiarized themselves with the record prior to voting, remanded the matter back to the board with direction that each board member was to read the entire record, reconsider the matter and render a new decision. Judge Mintz' remand order was specific. It required the board to 'review prior proceedings . . . public hearings and meetings that led up to Judge Doherty's decision of August 9, 2002 . . . . The remand is only for the purpose of the board reviewing those public hearings . . . and . . . transcripts from meetings or minutes of meetings and rendering a new decision. . . . And no evidence besides what's in that record . . . is to be produced by anybody whether it's the board or the plaintiffs in this action, and the board has to make a decision pursuant to that.' . . .

"On September 17, 2007, the board reconvened pursuant to the remand order to reconsider the six proposed categories of products on the third site plan application. Each member of the board signified in turn that he had read the entire record. Each of the six categories of products was taken up in turn, discussion on each was minimal, and each of the six items was approved or disapproved in terms identical to the prior decision rendered on October 17, 2005, including the application of the definition of 'fine furniture' adopted at the prior hearing as being 'one of a kind, hand-crafted, not mass produced and capable of appreciating in value.' . . .

"On September 26, 2007, the plaintiffs commenced this present action [in the Superior Court] as an appeal

from the decision of the board, claiming that the board acted illegally, arbitrarily and in abuse of its discretion in multiple respects. All of the instances claimed by the plaintiffs essentially fall into three categories, namely, that the board has illegally and arbitrarily redefined 'fine furniture' as it is used in the Amatulli variance, that on remand from at least [this court], if not also on remand from the trial court, *Mintz*, *J.*, the board considered documents and information [that] was not in the return of record, and the board prejudged and predetermined the application. At the start of the trial of this matter on September 3, 2009, the plaintiffs' counsel formally withdrew the claim of predetermination as a ground for appeal."

After trial, the court, *Maronich*, *J.*, in a memorandum of decision, adopted many of the findings set forth by Judge Stodolink in his 1998 site plan decision. It then found, in part, that the board's definition of "fine furniture" was arbitrary and illegal and that it had "no relation to the use of the premises as originally proposed and approved by the board at the time of the grant of the original variance." The court then held, in part, that "the meaning of 'fine furniture' as used in the Amatulli variance [was] 'good quality furniture,' nothing more and nothing less." The court sustained, in part, the appeal of the plaintiffs and remanded the matter "to the board to reconsider [the relevant] categories of products consistent with the definition of 'fine furniture' [that] the court ha[d] set forth in [its] decision." This appeal followed.

On appeal, the board claims that the court "improperly overturned the board's definition of fine furniture as set forth in the variance [pertaining to the] plaintiffs' property by disregarding the conclusions reached by [this] [c]ourt and pertinent evidence in the administrative record, all of which strongly support the board's definition." The board next argues that the trial court

thereafter improperly substituted its interpretation of the term "fine furniture" for that of the board. The plaintiffs argue that the meaning of "fine furniture" is a question of law and that the court acted properly in construing the term in accordance with the administrative record. Both parties agree that this issue presents a question of law, over which our review is plenary. Somewhat paradoxically, the board also argues in its reply brief that the interpretation of words contained in a variance is unlike the interpretation of a zoning regulation and that it is entitled to deference in its interpretation of the words and terms contained in a certificate of variance that it issued.[2] The issue on appeal presents a unique question in that most appeals concerning the conditional approval of variances implicate the propriety of the conditions attached or the scope of the variance rather than the precise meaning of a word or phrase used in the variance.

Before considering the propriety of the court's determination that the board's interpretation of the variance at issue was arbitrary and illegal, we first address the appropriate standard by which we review that determination. That question presents an issue of law over which our review is plenary. *Crews* v. *Crews*, 295 Conn. 153, 167, 989 A.2d 1060 (2010). It is axiomatic that conditions attached to a variance are part and parcel of the approved variance. See *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 858, 670 A.2d 1271 (1996) ("if

[2] The board contends that its argument is supported by *Simko* v. *Ervin*, 234 Conn. 498, 504–507, 661 A.2d 1018 (1995), in which our Supreme Court explained that variances are different from zoning regulations and that the board, and not the court, initially should be permitted to determine what the board meant by the term " 'footprint' " when it attached a certain condition to a variance. *Simko*, however, concerned whether a plaintiff was required to appeal the issuance of a cease and desist order to the board before appealing to the Superior Court; id., 499; it dealt exclusively with the exhaustion doctrine. Id., 504–508. We are not persuaded that it has any relevance to the case at hand.

a zoning board would have refused to grant a variance without a particular condition, the condition is an integral part of the variance"); *Burlington* v. *Jencik*, 168 Conn. 506, 509–10, 362 A.2d 1338 (1975) (variance and attached conditions inextricably linked). A fortiori, the interpretation of such conditions must be guided by the same principles governing the interpretation of the variance itself.

As our Supreme Court has explained, "[a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715, 960 A.2d 1018 (2008).

A variance is unique in that, on the one hand, it is a local land use ordinance, insofar as an ordinance is defined as "an authoritative law or decree . . . ." Black's Law Dictionary (9th Ed. 2009) p. 1208. On the other hand, a variance is an expression of explicit authority to contravene local zoning ordinances. See *Burlington* v. *Jencik*, supra, 168 Conn. 508 (variance constitutes "authority extended to the owner to use his property in a manner forbidden by the zoning enactment"); *Dupont* v. *Zoning Board of Appeals*, 80 Conn. App. 327, 330, 834 A.2d 801 (2003) (same); see also Black's Law Dictionary, supra, 1692 (defining variance as "[a] license or official authorization to depart from a zoning law"). Put differently, a variance is a sanctioned exception from local land use regulations. The issuance of a variance is a local land use decree, and the conditions attached thereto are a form of regulation. Accordingly, we see little reason why the interpretation of a variance and its conditions should be guided by an

analysis different from that which governs the interpretation of local land use regulations or statutes. Just as when we employ a plenary standard of review over the Superior Court's interpretation of local land use regulations; see *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 229, 820 A.2d 275 ("[b]ecause the court, in interpreting the regulations, made conclusions of law . . . our review is plenary"), cert. denied, 264 Conn. 906, 826 A.2d 177 (2003); we conclude that when a lower court interprets the terms of a variance or its conditions, our review likewise is plenary over that question of law.

More specifically to the point of the appeal at hand, whether a board is entitled to deference in its consideration of the meaning of undefined words or phrases contained in a certificate of variance apparently has not been decided by appellate authority in Connecticut, nor have we found authority appropriately on point from other jurisdictions. After our careful consideration of this question of first impression, we conclude that the undefined terms and phrases contained in a certificate of variance should be interpreted in a manner consistent with regulatory or statutory construction. See generally *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 441, 586 A.2d 590 (1991) (zoning regulations are local legislative enactments interpreted under same principles as statutes). If the undefined words or terms are clear and unambiguous on their face, the interpretation of their meaning poses a question of law, which requires nothing more than looking to the certificate itself, and the board's interpretation in the first instance generally would be accorded no deference. See generally *200 Associates, LLC* v. *Planning & Zoning Commission*, 83 Conn. App. 167, 174, 851 A.2d 1175, cert. denied, 271 Conn. 906, 859 A.2d 567 (2004). At the same time, where the undefined words or phrases are ambiguous or reasonably susceptible to multiple interpretations, a search for the intent of the board at the time

it approved the variance is necessary to resolve that question of law properly. See *Kraiza* v. *Planning & Zoning Commission*, 121 Conn. App. 478, 494, 997 A2d 583 ("[w]hen construing a [regulation], [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the [commission]" [internal quotation marks omitted]), cert. granted on other grounds 298 Conn. 904, 3 A.3d 70 (2010).

In the present case, the phrase "fine furniture" is not defined in the Ridgefield zoning regulations or the certificate of variance at issue; nevertheless, "whether [a term is] defined or not, its meaning is a question of law." *Jeffery* v. *Planning & Zoning Board of Appeals*, 155 Conn. 451, 454, 232 A.2d 497 (1967). Whether the specific items that the plaintiffs sought to sell fit into the legal definition of "fine furniture," however, presents a question of fact, which is to be determined by the board, subject to a review of the reasonableness of its conclusion. *Jeffery* v. *Planning & Zoning Board of Appeals*, supra, 454; see also *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 83 Conn. App. 9. In this appeal, we are called on first to determine whether the court's legal conclusion that the board's definition of "fine furniture" was arbitrary and illegal was improper, and, if it was improper, we then must determine whether the court's legal construction of the term "fine furniture" was improper. Accordingly, we employ a plenary standard of review of these issues.

"A term that is employed in the regulations may not be interpreted to mean whatever the commission chooses it to mean. That would render it impossible for a party to discern the true meaning of the term and, thus, to know whether compliance with the regulation is possible." *200 Associates, LLC* v. *Planning & Zoning Commission*, supra, 83 Conn. App. 174. When a term is defined, it is not necessary for us to consider its common and ordinary meaning. See General Statutes § 1-1 (a). "If [however] it is not otherwise defined, a

word has its usual and customary meaning, and may not be construed to include that which is not clearly within its terms." *200 Associates, LLC* v. *Planning & Zoning Commission*, supra, 174.

As we explained in *Anatra* v. *Zoning Board of Appeals*, 127 Conn. App. 125, 133–34, 14 A.3d 386, cert. granted, 301 Conn. 902, 17 A.3d 1043 (2011): "Clearly, under our law, the board ha[s] the authority to attach reasonable conditions to . . . certificates of variance . . . . Since variances allow uses forbidden by the regulations, the attachment of conditions to the granting of a variance alleviates the harm which might otherwise result. . . . Were it not for the conditions imposed by a board of appeals, variances might not be supportable as being in harmony with the general purpose and intent of the zoning ordinance. . . . Thus the variance and the attached conditions are inextricably linked, the viability of the variance being contingent upon the satisfaction of the conditions." (Citations omitted; internal quotation marks omitted.)

"A primary purpose for requiring certificates of variance to be recorded in the land records is because a variance runs with the land and is not specific to the individual applying for it. General Statutes § 8-6 (b); *Reid* v. *Zoning Board of Appeals*, [supra, 235 Conn. 859]; *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 167–68, 855 A.2d 1044 (2004). Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance. General Statutes § 8-6 (b). . . . The board must clearly state any conditions in its decision so that all interested parties are fully

aware of the nature and extent of the conditions." (Internal quotation marks omitted.) *Anatra* v. *Zoning Board of Appeals*, supra, 127 Conn. App. 135.

In this case, the board granted a variance for property located at 975 Ethan Allen Highway, which provided in relevant part: "[T]his action permits wholesale and retail sales to be conducted from the premises, unrestricted as to type of customer or hours of operation, but restricted as to the products to be sold. Such wholesale and retail sales shall be limited to oriental rugs, fine furniture and art." At issue in this appeal is the definition of the term "fine furniture" as used in that certificate of variance. The board, after searching the record, which included, inter alia, the proceedings in which the variance originally was granted, determined that the term meant furniture that is "one of a kind, hand-crafted, not mass produced, and capable of appreciating in value."[3] On appeal to the Superior Court, the court determined that the meaning of fine furniture was a question of law and that the board's interpretation was illegal and arbitrary in that it had "no relation to the use of the premises as originally proposed and approved by the board at the time of the grant of the original variance." Faced with the ambiguity inherent in that terminology, the court then considered the language of the certificate of variance, the variance application, the original transcripts of the hearing on the

---

[3] In 2005, the board thus defined "fine furniture" to mean "one of a kind, hand-crafted, not mass produced, and capable of appreciating in value." A similarly restrictive definition had been rejected by the board in 1990 before it granted the variance for the plaintiff's predecessor to sell "oriental rugs, fine furniture and art." The effect of the board's 2005 definition was to contract the scope of the 1990 variance and the meaning of "fine furniture" as used therein. The board did not have the authority to modify the variance in this manner. See *Anatra* v. *Zoning Board of Appeals*, supra, 127 Conn. App. 135–38; *Dodson Boatyard, LLC* v. *Planning & Zoning Commission*, 77 Conn. App. 334, 337–39, 823 A.2d 371, cert. denied, 265 Conn. 908, 831 A.2d 248 (2003).

variance application and the circumstances surrounding the granting of the original certificate of variance, Judge Stodolink's 1998 site plan decision, among other things, and concluded that the meaning of the term "fine furniture" as used in the certificate of variance meant "good quality furniture, nothing more and nothing less." (Internal quotation marks omitted.) On our plenary review, we agree with the court that the board's interpretation of the term "fine furniture" was arbitrary and illegal, having no basis in the record. However, we further conclude that the definition adopted by the court also was arbitrary and illegal. Our own review of the record leads us to conclude, as a matter of law, that the term "fine furniture," as used in the variance at issue in the case, refers to furniture of a high quality, rather than a good quality.

The relevant record reveals the following. In 1990, Amatulli applied for a variance for 975 Ethan Allen Highway, seeking "to permit retail and wholesale sales of oriental rugs, fine furniture and art to the general public, as a limited use on weekends, holidays, and seasonal warehouse sales (approximately [four] times/year)." After Amatulli presented his request and the board's hearing was complete, the board began its deliberation on the application. The board discussed that it did not want to place restrictions on the days or times that Amatulli would be allowed to engage in retail sales because it would present an enforcement issue. Board member Marjorie Tippet stated that she also did not want to adopt a restriction that needed to be interpreted. The board then discussed what the term "art" meant and seemed to agree that its definition was "in the eye of the beholder." The board members discussed whether the variance should be limited in the types of rugs and furniture to be sold. Board member Robert Mannion stated the board should consider limiting the sales to "individually crafted" items: "Individually

crafted, first of all it gets rid of all—contract carpets would not be there because they are mass produced and they would not be an individual thing; and they would be joined together in the field. Individually crafted would have to be a rug or *a unique piece of furniture.*" (Emphasis added.) Board member Duncan Hume then responded to Mannion, stating: "But [Amatulli] sells all kinds of furniture according to the picture."[4] Tippet then stated that she thought limiting the retail sales to "oriental rugs, fine furniture and art" was sufficient because the applicant would not "be selling $30,000 rugs and then put in cheap Scandinavian furniture." The board then agreed that the phrase "fine furniture" would be used to describe the type of furniture that would be permitted under the variance. The motion to approve the variance was passed without opposition. We concur with the court's determination that this record does not support the board's subsequent determination that, at the *time it approved the variance application,* it intended the term fine furniture to mean "one of a kind, hand-crafted, not mass produced, and capable of appreciating in value."

After the hearing on the 1990 application, the board decided not to restrict the days and hours of the store's retail operation because such restriction would present an enforcement issue. It also was discussed that restrictions that needed interpretation should be avoided. As previously stated, the board members recognized that the meaning of the word "art" was "in the eye of the beholder." In the board's very brief discussion of furniture, members questioned whether the variance should restrict the types of furniture allowed to be sold. They

---

[4] The record does not appear to contain original photographs submitted to the board. There are some poor quality black and white copies of photographs attached to the transcript of the board's deliberation, however. These photographs depict oriental rugs, works of art hung on the walls and many pieces of furniture, including straight backed chairs, sofas, dining room tables and lamps.

specifically discussed whether sales should be limited to "individually crafted" or "unique" items. That restriction, however, was not pursued because the board recognized that the applicant sought to sell at retail "all kinds of furniture . . . ." Clearly, the board contemplated using the words "individually crafted" or "unique" but opted not to employ such a restriction because the applicant was going to sell at retail "all kinds of furniture." The board, instead, opted to use the term "fine furniture" as had been requested by the applicant. In light of the foregoing, we conclude that the court properly determined that the board's subsequent definition of the term "fine furniture" was arbitrary and illegal, wholly unsupported by the record evincing its intent. According, we affirm this aspect of the court's judgment.

After concluding that the board's subsequent definition of "fine furniture" was arbitrary and illegal, the court then proceeded to review the record independently and concluded that the record supported a determination that the board, at the time it approved the variance application, intended the term "fine furniture" to mean " 'good quality furniture,' nothing more and nothing less." That conclusion, however, does not comport with the court's specific adoption of the findings of Judge Stodolink as set forth in his 1998 site plan decision or with the record.

The court adopted as its own the following relevant findings of Judge Stodolink from *R&R Pool & Patio* v. *Zoning Board of Appeals*, Superior Court, judicial district of Danbury, Docket No. CV-316152 (October 26, 1998): "[D]uring the course of the plaintiffs' hearings, they presented four witnesses who testified that a definition of 'fine furniture' does not exist and that the term is a fairly subjective one. The witnesses also testified that in their opinions, the furniture that the plaintiffs proposed to sell was 'fine furniture' because it was quite

expensive and of a high quality. Finally, the witnesses stated that the plaintiffs' furniture could be used both indoors and outdoors and that the indoor/outdoor distinction, standing alone, would not necessarily lower the quality of the furniture. Additionally, the plaintiffs submitted numerous excerpts from dictionaries and other sources demonstrating the lack of any definition of 'fine furniture.' They also submitted catalogues and photographs of the furniture proposed to be sold at the property; most of which was expensive and would be appropriate for indoor use. Letters were also submitted, most notably from David Barquist, who is currently employed by Yale University and who has been published in the area of American furniture. These letters indicated that there is no definition of fine furniture, except that the terms when used together generally imply quality. All of the foregoing was made part of the record before the board, and none of the foregoing was refuted by any evidence. Most notably, the plaintiffs' witnesses' testimony stood unrefuted.

\* \* \*

"[T]he board did not define the term 'fine furniture' when it granted Amatulli's variance application. In fact, the transcript from the hearing in which Amatulli requested the variance sheds little light on the board's interpretation of the term 'fine furniture.' The record reflects that the board was almost exclusively concerned with Amatulli's request for the limited retail sale of oriental rugs."

After specifically adopting these findings, and in consideration of the record and the plain dictionary meaning of the words "fine" and "furniture," the court stated that "the meaning of 'fine furniture' as used in the Amatulli variance [is] 'good quality furniture,' nothing more and nothing less." We disagree and conclude that the term "fine furniture," as it is used in the variance, means

high quality furniture, rather than good quality furniture. As credited by Judge Stodolink, and adopted by Judge Maronich in the present case, "the furniture that the plaintiffs proposed to sell was 'fine furniture' *because* it was quite expensive and of a *high quality*. . . . [T]he terms [fine and furniture] when used together generally imply quality."[5] (Emphasis added.) This testimony was unrefuted in the first site plan appeal. Additionally, the Random House Webster's Unabridged Dictionary (2d Ed. 1993) p. 719, defines "fine" in relevant part as "1. of superior or best quality; of high or highest grade . . . 2. choice, excellent, or admirable . . . ." It defines the word "furniture" in relevant part as: "1. the movable articles, as tables, chairs, desks or cabinets, required for use or ornament in a house, office, or the like. 2. fittings, apparatus, or necessary accessories for something. . . ." Id., p. 777. Similarly, the Merriam-Webster Collegiate Dictionary (10th Ed. 1993) p. 436, defines "fine" in relevant part as: "superior in kind, quality, or appearance . . . ." It defines the word "furniture" in relevant part as: "equipment that is necessary, useful, or desirable: as . . . (b) movable articles used in readying an area (as a room or patio) for occupancy or use." Id., p. 474.

The findings of Judge Stodolink, from which no appeal was taken, and which were adopted by Judge Maronich in the present case, combined with the common usage of the words "fine" and "furniture" and with our own review of the relevant transcripts and documents in this case, which further support the earlier findings of Judge Stodolink, demonstrate that the meaning of the term "fine furniture," as used in the 1990 certificate of variance issued for the property located at

---

[5] Although our Supreme Court in *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 257 Conn. 475, found that Judge Stodolink had not defined the term "fine furniture" in the site plan decision, it is clear that Judge Stodolink credited the expert testimony that opined that the plaintiffs' furniture was "fine furniture" because it was expensive and of a high quality.

975 Ethan Allen Highway, is furniture of a high quality. A review of the relevant record in this case demonstrates that the board, at the time it approved the 1990 variance, wanted to restrict the retail furniture items to be sold at the plaintiffs' property to furniture of a high quality. It is evident from the record that this did not equate solely to furniture that was "one of a kind, hand-crafted, not mass produced, and capable of appreciating in value." Rather, we conclude on the basis of the record that the board intended "fine furniture" to mean high quality furniture.

The judgment is reversed only as to the court's determination of the meaning of the term "fine furniture" as set forth in the certificate of variance and the case is remanded to that court with direction to remand the case to the board for further proceedings. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.