******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID W. SANTARSIERO ET AL. *v.* PLANNING
AND ZONING COMMISSION OF THE
TOWN OF MONROE ET AL.
(AC 37813)

Alvord, Sheldon and Bear, Js.

*Argued February 10—officially released May 31, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. Richard P. Gilardi, judge trial referee.)

*Kevin J. Gumpper*, for the appellants (plaintiffs).

*Michael C. Jankovsky*, for the appellee (defendant
Real Time Investments, LLC).

*Opinion*

ALVORD, J. The plaintiffs, Donna MacKenzie, David W. Santarsiero and Colleen M. Santarsiero, appeal from the judgment of the Superior Court dismissing their appeal from the decisions of the defendant Planning and Zoning Commission of the Town of Monroe (commission) granting a special exception[1] to the defendant Real Time Investments, LLC.[2] The commission granted the defendant a special exception pursuant to article XVIII, § 117-1800,[3] of the February, 2013 revision of the Monroe Zoning Regulations (regulations), and approved its request for a zone change pursuant to article IX, § 117-900,[4] of the regulations. On appeal, the plaintiffs claim that the court improperly (1) concluded that the commission, in granting the special exception, possessed the authority to waive landscape buffer requirements for areas contiguous to an inland wetland area, and (2) concluded that the commission's authority in this action was properly based on a 2009 variance, granted by the Monroe Zoning Board of Appeals (board), that could not be subject to collateral attack. We affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to this appeal. Since 2009 the defendant has attempted to gain the appropriate approvals to build a McDonald's restaurant with a drive-up window on 4.027 acres that the defendant owns at 579 Main Street, Monroe (property). The distance between plaintiffs' property line and the defendant's property line is approximately 100 feet, however the plaintiffs' property does not abut the defendant's property.

In 2009, the defendant applied for a variance from the board to allow a restaurant with a drive-up window. At the time, 0.65 acres of the defendant's property was zoned as "Design Business District 1" (DB1), which did not permit restaurants with a drive-up window.[5] The remainder of the property was zoned "Residential and Farming District C" (RC). Written notification of the application and hearing date were provided to the plaintiffs. After a public hearing, the board granted the variance. The plaintiffs did not appeal from the granting of the variance.

On November 4, 2010, the defendant, relying on the 2009 variance, filed an application with the commission seeking a special exception, as allowed in the regulations; see footnote 3 of this opinion; a zone change and a request for site plan approval in order to construct a McDonald's restaurant with a drive-up window on its property. In its application for a special exception the defendant sought modifications to the setback and landscape buffer requirements that the regulations required where commercial property abuts residential property.[6] In its application for a zone change the defendant sought to convert an additional 1.15 acres of its property from

a RC to a DB1 zone. During a public hearing on the applications, the plaintiffs' attorney, Kevin J. Gumpper, who at the time represented another party, raised objections to the defendant's requests.[7] The commission approved the zone change and the special exception incorporating the nonconforming setbacks and landscape buffer. The plaintiffs appealed to the Superior Court, but their claims were dismissed. After granting a petition for certification to appeal, this court reversed the granting of the special exception and affirmed the partial zone change. *MacKenzie* v. *Planning & Zoning Commission*, 146 Conn. App. 406, 442, 447–48, 77 A.3d 904 (2013). This court concluded that the commission lacked the authority to grant a special exception that varied setback and landscape buffer requirements.

On February 14, 2013, and prior to this court's decision in *MacKenzie*, the defendant returned to the commission with a revised application for special exception, again in order to construct a McDonald's restaurant with a drive-up window. The defendant sought to have the entire property rezoned as a DB1 zone. The general location of the restaurant building on the property remained the same, but the defendant's new plan involved installing a septic system in the rear portion of the property. The variances that were at issue in *MacKenzie* were no longer necessary to the project because the adjacent property had been rezoned from a RC to a DC1 zone, eliminating the need for a landscape buffer between those parcels.

The commission held a public hearing on July 11, 2013, on the defendant's revised application. The defendant's attorney stated at the hearing that the zone change was necessary because even though the septic system would be underground and not be visible, it was for commercial use, and therefore could not be built on residentially zoned property. The restaurant and parking area would be built along Main Street, on the portion of the property that was already zoned commercial and abutted by other commercial properties. The rear portion of the property, where the septic system would be installed, was abutted by residential properties that were not owned by the plaintiffs.

At the public hearing, the defendant's engineer stated that much of the rear portion of the property was "extensively wooded" and the defendant was "not planning on touching it." However, trees would be removed from that area where the septic system was to be buried, and would be replaced with "no mow" grass. The defendant's engineer stated that additional landscaping would be added to the property after the septic system was installed.[8] The engineer also stated that an old driveway that connected the front and rear portions of the property would be excavated and replaced with vegetation.

The rear portion of the property included several

areas that were marked as inland wetlands. As such, the defendant had submitted its septic system and landscaping plans to the Monroe Inland Wetlands Commission (inland wetlands commission) for its approval. At the planning and zoning hearing, the defendant's engineer informed the commission that the presence of inland wetlands limited its ability to create a landscape buffer that conformed to the regulations. The planning and zoning application was continued pending a final report and approval from the inland wetlands commission.

Additional hearings were held through the summer of 2013. The plaintiffs' attorney argued before the commission that the defendant's landscaping plan did not provide an adequate buffer between the plaintiffs' properties and the proposed McDonald's restaurant. Attorney Gumpper, representing the plaintiffs, stated to the commission: "The area [at the rear of the property] is presently wooded, heavily wooded as described by the applicant's engineer, and that provides a terrific buffer for the noise and lights that are down presently on Main Street [where the McDonald's would be located], so [for the defendant] to say that this is not going to have any impact because you are tearing down all the trees to put in a septic system is quite to the contrary." The defendant's attorney argued that the proposed site plan would result in an adequate buffer: "[W]e have a very large open field like area in the rear that will provide no visual impact at all to any of the residential neighborhoods. . . . We have a wetlands buffer that prevents the commercial activity from leaking into an area which is abutting a residential area . . . ." At a hearing in August, 2013, the defendant's attorney further stated: "The development of the project itself is on four acres, of which [the McDonald's] only basically uses one acre and creates a three acre buffer." Prior to deliberating on the defendant's applications, each commission member visited the site. The defendant also offered to grant the town of Monroe (town) a conservation easement on the rear portion of the property where the septic system would be installed.

The inland wetlands commission approved the defendant's site plan. Its report and approval were disclosed to the commission. During deliberations on the defendant's planning and zoning applications, commission members expressed concern about additional development of the defendant's property if the zone change was approved and the septic system was never installed. The commission members concluded that the proposed conservation easement addressed these concerns.[9]

On August 29, 2013, the commission approved the defendant's special exception as requested by a vote of four to one. The commission also approved the defendant's zone change request by the same four to one vote. A conservation easement for the rear portions of

the property was listed as a condition of the special exception permit. During the public hearings and deliberations, the commission members did not specifically discuss the landscape buffer requirement or the regulatory exceptions to that rule. However, when the commission granted approval for the special exception it adopted the following statement as part of its reasoning: "This site has been landscaped thoroughly, including landscaped to meet the inland wetlands requirements."

The plaintiffs appealed to the Superior Court to overturn the commission's decisions approving the zone change and granting the special exception.[10] The court concluded that the commission did not abuse its discretion in granting the special exception because there was substantial evidence to support the commission's decision to waive the landscape buffer requirement. Interpreting the regulations and, specifically, § 117-902 (G) (4) that authorized waiver of the landscape buffer requirement for inland wetland areas, the court concluded: "The regulations afford the commission the discretion to determine that an alternative buffer may be necessary in areas not strictly wetlands in order to preserve the wetlands themselves." The court also rejected the plaintiffs' argument that the 2009 variance should be subject to collateral attack in this case, observing that the plaintiffs had failed to directly appeal the variance when it was originally granted. The court dismissed the plaintiffs' appeal.

The plaintiffs thereafter filed a petition for certification to appeal pursuant to General Statutes § 8-8 (o). We granted the petition and this appeal followed.

I

The plaintiffs claim on appeal that the court improperly concluded that the commission had the authority to waive the landscape buffer requirement in accordance with a regulatory exception for inland wetland areas. The plaintiffs argue that the commission abused its discretion when it approved the defendant's special exception without requiring the landscape buffer of three rows of evergreen trees. See footnote 6 of this opinion. We conclude that the commission was within its discretion to find that the application for special exception complied with the regulations.[11]

The following additional facts are relevant to the plaintiffs' claim. The rear portion of the defendant's property bordered residentially zoned properties. Once the defendant's entire property was rezoned to DB1, the regulations required a landscape buffer between it and the residentially zoned properties. Monroe Zoning Regs. (Rev. to February, 2013), art. IX, § 117-902 (G) (2). Section 117-902 (G) (2) specified that the landscape buffer, for property zoned DB1, must consist of at least three rows of evergreen trees planted fifteen feet apart. The regulations provided two exceptions: (1) if the com-

mission concluded that the property's natural vegetation formed an effective buffer then the commission had the discretion to augment or satisfy the landscaping requirement,[12] or (2) if the buffer area was an inland wetlands area, then the commission, in order to preserve and protect the inland wetlands, had the discretion to waive the buffer requirement or prescribe alternative requirements.[13] The commission did not specifically address the landscape buffer requirement or either of these exceptions when it deliberated on the defendant's applications.

"As a preliminary matter, we set forth the standard of review. . . . The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . Because the court, in interpreting the regulations, made conclusions of law in its memorandum of decision [in this case], our review is plenary." (Internal quotation marks omitted.) *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 228–29, 820 A.2d 275, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003).

"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, 218 Conn. 65, 72, 588 A.2d 624 (1991).

"We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision [in this case, the plaintiffs]. . . . Courts are not to substitute their judgment for that of the board . . . ." (Citations omitted; internal quotation marks omitted.) *Raymond* v. *Zoning Board of Appeals*, supra, 76 Conn. App. 229.

"The ultimate issue is whether the trial court was correct in ruling that the commission's decision to grant the special permit was not arbitrary, illegal or an abuse of its discretion. . . . The rules of statutory construction apply to the interpretation of local regulations. . . . We look first to the language of the regulation to determine the intent of the enacting body. . . . If the language of the regulation is ambiguous, the court can look to its purpose as an aid in construing it." (Citations omitted.) *Double I Ltd. Partnership* v. *Plan & Zoning*

*Commission*, supra, 218 Conn. 72–73.

"A special [exception] allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use . . . must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." (Internal quotation marks omitted.) *MacKenzie* v. *Planning & Zoning Commission*, supra, 146 Conn. App. 441.

The trial court interpreted the scope of the inland wetlands exception, however, we find it unnecessary to do so. The defendant argues that the commission had the authority to waive the landscape buffer requirement under either the inland wetlands exception or the natural vegetation exception. The commission did not specifically address these regulatory exceptions, but it did deliberate about the landscaping of the rear portion of the defendant's property. In its review of the defendant's application for a special exception, the commission was acting in an administrative capacity.

The commission was presented with evidence that showed that significant portions of the perimeter of the defendant's property were in inland wetland areas. The regulation was unambiguous as to the commission's authority to waive the landscape buffer requirement when a buffer would be located within an inland wetland area: "[T]he Commission, at its discretion, may prescribe alternative buffer requirements or waive buffer requirements in order to preserve and protect [inland] wetland area[s] . . . ." Monroe Zoning Regs. (Rev. to February, 2013), art. IX, § 117-902 (G) (4). The commission did not mandate an alternative buffer, but it did accept the defendant's plan to add plants and trees as alternatives to evergreens and to grant the town a conservation easement on the rear portion of the property.

The remainder of the perimeter of the defendant's property, where it abutted residential property, supported natural vegetation consisting primarily of heavy woods. The commission was aware that some trees would be removed, and each commissioner visited the property. We reasonably can infer that by approving the special exception, four commissioners accepted that the remaining natural vegetation provided a sufficient buffer. This is a judgment that was within the commission's discretion: "Where in the judgment of the Commission sufficient natural vegetation exists it may be substituted in total . . . to establish an effective buffer within the intent of the regulations." Monroe

Zoning Regs. (Rev. to February, 2013), art. IX, § 117-902 (G) (3).

The commission's decision to accept the natural vegetation as an effective buffer was further buttressed by the accepted terms of the special exception. The only structure that was approved for the rear portion of the property was an underground septic system. In addition, the conservation easement granted by the defendant to the town would ensure that natural vegetation stayed in place. The commission also noted that the existing variations in elevation between the properties would screen the commercial development. Finally, the defendant's attorney stated to the commission that the proposed McDonald's restaurant and the nearest home were at least 500 feet apart.

The commission was within its authority to exercise liberal discretion to apply the regulations to the facts that it was presented with concerning the property and landscaping. See *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 218 Conn. 72. It was within the commission's discretion to determine if the remaining natural vegetation provided an effective landscape buffer. The plaintiffs have not presented sufficient evidence to overcome their burden to demonstrate that the commission's decision to grant the special exception was unreasonable, arbitrary or illegal. See id. Accordingly, the plaintiffs' first claim fails.

II

The plaintiffs also claim that the court improperly concluded that a 2009 variance granted to the defendant by the board was not subject to collateral attack. The variance granted the defendant the right to construct a restaurant with a drive-up window on its property even though a drive-up window was specifically prohibited in the DB1 zone. The plaintiffs did not appeal the decision of the board. The 2009 variance formed the basis of the commission's authority to grant the 2013 special exception to the defendant. The plaintiffs argue that the variance should not be allowed to stand because the board exceeded its authority when it granted the variance in 2009. We disagree.

The following additional facts are relevant to this claim. In 2009, the board approved the defendant's application for a variance from the DB1 zoning regulations after concluding that the defendant suffered an unusual hardship. The defendant's hardship claim derived from the commission's adoption of a town wide plan of conservation and development in 2000 that called for the merger of the DB1 and design business district two (DB2) zones in order to form a single design business district zone.[14] In 2009, when the defendant applied for the variance, the town had not yet changed its zoning regulations to reflect the plan's vision. According to the defendant's variance application, new

zoning regulations were proposed in 2007 that would allow restaurants with drive-up windows in the new zone if certain conditions were met, but the regulations had not been adopted as of the time the defendant applied for a hardship waiver.[15] The board approved the variance after concluding that the defendant had established the requisite hardship. The plaintiffs were notified of the hearing, but did not appeal the decision.

We begin by setting forth our standard of review. "[W]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Caltabiano* v. *L & L Real Estate Holdings II*, *LLC*, 122 Conn. App. 751, 758, 998 A.2d 1256 (2010).

"First, we have uniformly held that failure to file a zoning appeal within the statutory time period deprives the trial court of jurisdiction over the appeal. . . . We have also consistently held that when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. . . . Moreover, we have ordinarily recognized that the failure of a party to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court. . . . All of these rules rest in large part, at least in the zoning context, on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town—on the decisions of the zoning authorities." (Citations omitted; internal quotation marks omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 102, 616 A.2d 793 (1992).

Our Supreme Court has recognized "that there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy. It may be that in such a case a collateral attack on such a condition should be permitted." Id., 104–105.

"As [the] language in *Upjohn Co.* indicates, it must be an 'exceptional [case]' that will justify disturbing the stability of unchallenged land use decisions. . . . Thus, a litigant who seeks to invoke this exception must meet a very high standard." (Citation omitted.) *Torrington* v. *Zoning Commission*, 261 Conn. 759, 768, 806 A.2d 1020 (2002).

In 2009, the plaintiffs received notice of the pendency

of the variance application and the hearing date. They did not appeal from the board's decision made after the public hearing. More than six years later the plaintiffs now seek to overturn that decision, arguing in this appeal that this is an exceptional case because the variance for a restaurant with a drive-up window was not a valid exercise of zoning power and there could not have been any justified reliance on it. However, when these same plaintiffs appeared before this court in *MacKenzie*, challenging the defendant's similar restaurant plan that also relied on the 2009 variance, the plaintiffs did not raise this claim. See *MacKenzie* v. *Planning & Zoning Commission*, supra, 146 Conn. App. 408–409.

After a careful review of the documents in the record of this case that relate in any way to the 2009 variance hearing, we cannot conclude that the board exceeded its authority by granting the 2009 variance. The variance granted the defendant the right to construct a restaurant with a drive-up window on its property despite language in the zoning regulations that prohibited use waivers. However, "[i]t is not enough that the conduct in question was in violation of the applicable zoning statutes or regulations. It must be shown that the conduct was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it." *Torrington* v. *Zoning Commission*, supra, 261 Conn. 768.

The documents relating to the record of the 2009 variance hearing are devoid of any evidence placed before the board relevant to the contention that a drive-up window changes the "use" of a restaurant for purposes of the regulations. Interpretation of the zoning regulations is a function of a zoning board of appeals. "The variance power exists to permit what is prohibited in a particular zone. . . . [T]he zoning board of appeals is the court of equity of the zoning process . . . ." (Citations omitted; internal quotation marks omitted.) *MacKenzie* v. *Planning & Zoning Commission*, supra, 146 Conn. App. 429.

The record does reflect that, in deciding to grant the variance, the board credited the defendant's hardship claim that the regulations were at odds with changes to the town's plan for conservation and development. After considering the language of the regulations and its plan for development, we conclude that the board's decision was not "so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it . . . ." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105. Therefore we are not persuaded that the 2009 variance should be subject to collateral attack.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The commission also granted the application filed by the defendant Real

Time Solutions, LLC, to rezone its entire property from residential zoning to commercial zoning. The plaintiffs did not appeal this decision to this court.

[2] Although the commission also was named as a defendant in the underlying proceeding, it has not filed an appellate brief with this court. For clarity, we refer in this opinion to Real Time Investments, LLC, as the defendant.

[3] Article XVIII, § 117-1800, of the February, 2013 revision of the Monroe Zoning Regulations (regulations) provides in relevant part: "Application may be made to the Planning and Zoning Commission for a special exception permit to establish uses specified elsewhere in these regulations as being permitted by special exception. . . ." All references in this opinion are to the February, 2013 revision of the regulations unless otherwise indicated.

[4] Article IX, § 117-900, of the February, 2013 revision of the Monroe Zoning Regulations provides in relevant part: "The owner or owners of a tract of land may petition for the establishment of a design district (D) only, coincidentally with an application for special exception permit and development proposal which shall be proposed and developed in conformance with these regulations. . . ."

[5] Permitted uses within DB1 included: "Restaurants and diners only where customers are seated at tables or counters and where seventy-five percent (75%) of the seats are within an enclosed building. Such food service may include catering and takeout service, *but shall not include a take-out or drive-up window, or opening to the outdoors (Class F)*." (Emphasis added.) Monroe Zoning Regs. (Rev. to February, 2013), art. XVIII, § 117-1101 (A) (5).

[6] Article XI, § 117-1104 (B), of the February, 2013 revision of the Monroe Zoning Regulations states: "All required yards abutting a residential and farming district shall be a landscaped buffer, as provided in Section 117-902 [G]." Article IX, § 117-902 (G) (2), of the February, 2013 revision of the Monroe Zoning Regulations states in relevant part: "[A] landscape buffer shall consist of no fewer than three (3) rows of suitable evergreen trees of one and one-half ($1^{1}/2$) inches caliper . . . ."

[7] "At that public hearing, Gumpper stated that 'I am here tonight on behalf of Duchess [restaurant] of Monroe, which has an operation at 139 Main Street in Monroe.' " *MacKenzie* v. *Planning & Zoning Commission*, 146 Conn. App. 406, 411 n.5, 77 A.3d 904 (2013). Attorney Gumpper represented the plaintiffs on appeal in *MacKenzie* as well as in the present appeal.

[8] At the public hearing, the following exchange took place among one commissioner, Karen Martin, the defendant's counsel, Raymond Rizio, and its engineer:

"[Commissioner Martin]: Would you . . . [c]onsider putting in additional landscaping on the parcel that you're asking us to do a zone change on? . . . [The] [b]ack three acres.

"[Attorney Rizio]: We are putting [in] additional landscaping . . . .

"[Commissioner Martin]: I know you can't do a lot because of the septic, but.

"[The Defendant's Engineer]: Well no, we can't do a lot because of the wetlands too. In this area in right in here we are going to excavate the driveway that was created there, you know, a long time ago. We are entirely landscaping that area, and also this area in here with plants that the [Monroe Inland] Wetlands Commission has approved as appropriate for that use . . . .

"[Commissioner Martin]: What about the borders between the properties? . . .

"[The Defendant's Engineer]: Well, what we've proposed is this, to the extent that's possible, we'll leave the traits. The only areas [inaudible] these bushes in here are, vegetation, outside limits of the septic system that will create a buffer and are compatible with being next to the septic system and the root system and will grow under the shade of the trees. The only place it will not have landscaping is this area [where the septic system will go] that has to have this 'no mow' grass because that's what's consistent with . . . .

"[Commissioner Martin]: What about on the top? . . . It's all wooded?

"[The Defendant's Engineer]: It's all extensively wooded. And no we were not planning on touching it. . . . [A]ll this area in here is an overstory of oak, maple, I think there's a couple beech in there . . . ."

[9] During deliberations, three commissioners concurred with the statement of Commissioner Jim Weinberg: "The main concern to me was if you do a zone change to the rear part of that lot, and the project that's scheduled for this does not come to [inaudible] what happens? . . . [Based on the defendant's presentation] [t]here's so many safeguards . . . that the rear lot will never get, be developed . . . in any practical sense unless there's a huge change in our own regulations simply because of the . . . wetlands

issues . . . there's nothing that's going to be built back there other than that septic system that's envisioned by this project. So I actually have no objection or no question whatsoever about the zone change at this point."

Commissioner Patrick O'Hara stated during deliberations on the special exception permit: "[A]s far as an appropriate building, the current residential properties will be screened not only from woods, but from an elevation in height . . . ."

[10] In addition to the claims raised with this court, the plaintiffs also argued to the trial court that the zone change should be found invalid because the defendant had not complied with statutory notice requirements regarding a rezoning application. The court ruled that there was sufficient evidence to conclude that the statutory requirements had been met. The plaintiffs did not appeal the court's judgment on this claim.

[11] We agree with the court that the commission did not abuse its discretion by granting the special exception, although on different grounds from those articulated by the court. The court reached its conclusion only after interpreting the meaning of the inland wetland exception to the landscape buffer requirement contained within § 117-902 (G) (4) of the regulations. We conclude that it was not necessary to interpret that regulation in order to resolve this case.

[12] Article IX, § 117-902 (G) (3), of the February, 2013 revision of the Monroe Zoning Regulations states: "Where in the judgment of the Commission sufficient natural vegetation exists it may be substituted in total or portions in lieu of (1) or (2) [the sections requiring rows of evergreen trees] or may be augmented by the requirements of (1) or (2) . . . to establish an effective buffer within the intent of the regulations."

[13] Article IX, § 117-902 (G) (4), of the February, 2013 revision of the Monroe Zoning Regulations states: "Where area required for buffer is an inland wetland area, the Commission, at its discretion, may prescribe alternative buffer requirements or waive buffer requirements in order to preserve and protect said wetland area consistent with the intent of the Connecticut General Statutes."

[14] The 2000 Plan of Conservation and Development stated in relevant part: "The Design Business districts (DB-1 and DB-2) are essentially identical with regard to development requirements (lots size, dimensions, etc.). The only major distinction between the zones relates to some uses that are permitted only in the DB-2 zone (such as service stations, take-out food service, vehicular sales and service).

"To simplify the structure of the zoning regulations, the regulations should be changed to merge the DB-1 and DB-2 zones together. The uses that are currently allowed should be reviewed and categorized as permitted uses, accessory uses, conditional uses, or eliminated from the zone."

[15] Monroe's zoning regulations were changed in October, 2013. The revised regulations allow restaurants with a drive-up window in the business district 1 zone conditioned upon approval of a special exception permit. Monroe Zoning Regs., art. 4, § 4.1.3 (N).