******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## GREGORY SARGENT *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD
### (AC 47532)

Clark, Seeley and DiPentima, Js.

*Syllabus*

The plaintiff property owner appealed from the trial court's judgment dismissing his appeal from the decision of the defendant town zoning board, which upheld the issuance of a certificate of zoning compliance by its zoning enforcement officer to the intervening defendants, abutting property owners. The plaintiff claimed, inter alia, that the court incorrectly concluded that a variance that had been granted to the intervening defendants in 2011 properly was considered in calculating the maximum building height of the intervening defendants' proposed residence. *Held*:

The trial court properly determined that there were no conditions attached to the variance, as the line designated for conditions on the certificate of variance issued by the board and filed in the land records was left blank, and this court could discern no ambiguities in the certificate of variance because it contained no language that reasonably could be construed as imposing a condition.

The zoning board properly considered the 2011 variance in calculating the maximum building height of the intervening defendants' proposed residence, as the variance was not rendered moot by a subsequent amendment to the town's zoning regulations, the plaintiff having cited no authority to support the proposition that a variance may be rendered moot by a subsequent amendment, and, pursuant to the statute (§ 8-6) governing a zoning board's authority to grant a variance, a variance runs with the land and is not personal to the recipient of the variance.

Argued April 16—officially released November 11, 2025

*Procedural History*

Appeal from the decision of the defendant affirming the decision of its zoning enforcement officer upholding the issuance of a certificate of zoning compliance, brought to the Superior Court in the judicial district of Fairfield, where Barbara Bertozzi Castelli and Jose Meller, as trustees of the BBC Revocable Trust, intervened as party defendants; thereafter, the case was transferred to the judicial district of New Britain; subsequently, the case was transferred to the judicial district of Hartford, Land Use Docket; thereafter, the case was

tried to the court, *O'Hanlan*, *J.*; judgment dismissing the appeal, from which the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Nicholas R. Bamonte*, with whom was *Jason D. Kaplan*, for the appellant (plaintiff).

*Joel Z. Green*, with whom, on the brief, was *Linda Pesce Laske*, for the appellees (intervening defendants).

*James T. Baldwin*, for the appellee (named defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Gregory Sargent, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant, the Zoning Board of Appeals of the Town of Fairfield (board), which upheld the issuance of a certificate of zoning compliance by the town's zoning enforcement officer to the intervening defendants, Barbara Bertozzi Castelli and Jose Meller, as trustees of the BBC Revocable Trust. On appeal, the plaintiff claims that the court incorrectly concluded that a variance that had been granted to the intervening defendants in 2011 properly was considered in calculating the maximum building height of the intervening defendants' proposed residence.[1] We disagree and, accordingly, affirm the judgment of the trial court.

---

[1] In the "Statement of Issues" of his principal appellate brief, the plaintiff identifies the issues raised on appeal as follows: (1) "[w]hether the trial court erred in finding that the maximum height variance granted to the intervening defendants in 2011 also applied to a proposal which they submitted for zoning approval in 2020," and (2) "[w]hether the trial court erred in finding that the [board's] denial of the plaintiff's appeal was supported by substantial evidence on the record."

For purposes of clarity, we have divided the arguments raised in support of the first issue into two distinct claims, namely, (1) whether there were conditions attached to the variance that had not been satisfied, and (2) whether the variance was rendered moot by a subsequent amendment to the pertinent regulations.

With respect to the second issue identified in the plaintiff's statement of issues—whether the court erred in finding that the board's decision was

The record reveals the following undisputed facts and procedural history. In May, 2011, the intervening defendants applied for a variance from the thirty foot building height restriction set forth in § 11.7 of the Fairfield Zoning Regulations (regulations) to construct a single-family residence with a height of 31.33 feet on beachfront property located at 1623 Fairfield Beach Road in Fairfield. The proposed residence had a contemporary design including a flat roof, with a limited 128 square foot area that would exceed the maximum building height by 1.33 feet.[2]

The plaintiff, who owns abutting property at 1609 Fairfield Beach Road, received notice of the intervening defendants' application and had no objection to the variance. After a hearing, the board unanimously voted

supported by substantial evidence in the record—the plaintiff raises various overlapping claims of error regarding the court's reliance on testimony from James Wendt, the town's planning director. The plaintiff contends that the court disregarded the documentary evidence before the board and relied instead on testimony from Wendt, who "effectively stepped into the shoes of a party to the appeal, namely, the [zoning enforcement officer]," and whose testimony consisted of "legal conclusions" which were not entitled to any deference. It is clear from our review of the court's decision that it appropriately conducted its own independent analysis of the questions of law at issue and properly reviewed the record in concluding that the record contained substantial evidence. See *Cockerham* v. *Zoning Board of Appeals*, 146 Conn. App. 355, 370, 77 A.3d 204 (2013) (although board considered and credited current and past zoning enforcement officers' application of regulatory language, it reached independent decision and did not simply defer to officer's interpretation), cert. denied, 311 Conn. 919, 85 A.3d 653 (2014), and cert. denied, 311 Conn. 919, 85 A.3d 654 (2014). Accordingly, we reject the plaintiff's second claim.

[2] In their application for the 2011 variance, the intervening defendants stated that they were "requesting a variance of [§] 11.7 [of the regulations] to permit an increase in height from 30 feet to 31.33 feet . . . . The height variance request is due to the nature of the proposed construction and the proposed [roofline]. The new home will be a contemporary design which will incorporate a flat roof. As shown [in] the architectural plans, the area which exceeds the height limitation of 30 feet is very limited in size. . . . This area of exceedance is essentially a room at the top of the stairs utilized to access the proposed [rooftop] deck."

to grant the requested variance. The variance was recorded on the land records on July 19, 2011.

The intervening defendants did not begin construction of the proposed residence due to Hurricane Irene in August, 2011, Hurricane Sandy in October, 2012, and subsequent changes to the zoning regulations. In 2013, the regulations were amended to require that dwellings be built from a certain minimum height, or base flood elevation (BFE), in the beach district and the coastal high hazard zones, where the proposed residence was located.[3] In addition, § 11.7 of the regulations was amended to permit an increased maximum building height; specifically, in addition to the thirty feet already permitted, "one foot of additional height shall be permitted for every two (2) feet of vertical distance between existing average grade and the base flood elevation."

In 2019, the intervening defendants modified the design for the proposed residence. A new survey demonstrated that 2000 square feet of the property had been lost and, therefore, the residence had to be made smaller. The modified plans included a pitched roof design rather than a flat roof design, and the size of the area that exceeded the height restriction set forth in § 11.7 of the regulations increased from 128 square feet to 456 square feet.

In January, 2020, the intervening defendants submitted their materials to the town for approval. The town's

---

[3] Specifically, § 32.5 of the Fairfield Zoning Regulations provides in relevant part: "In the coastal high hazard zones, designated as VE, the following provisions shall additionally apply . . . (c) All new construction and substantial improvements shall be elevated on adequately anchored pilings or columns, and securely anchored to such piles, and columns so that the lowest structural member of the lowest floor, excluding piles or columns, is elevated to or above the base flood level. . . ."

Section 32.8 (d) of the Fairfield Zoning Regulations defines BFE as "the elevation of the crest of the base flood or 100-year flood. The height in relation to mean sea level expected to be reached by the waters of the base flood at pertinent points in the floodplains of coastal and riverine areas."

zoning enforcement officer endorsed the modified plan and the new survey, in effect issuing a certificate of zoning compliance. The zoning enforcement officer noted that he approved the proposed residence with a height of 34 feet, 1.625 inches, which took into account the 1.33 feet from the 2011 variance.[4] The plaintiff first became aware of the certificate of zoning compliance in February, 2020. In March, 2020, he appealed to the board from the decision of the zoning enforcement officer.

On May 21, 2020, the board held a public hearing on the plaintiff's appeal from the issuance of the certificate of zoning compliance. At the hearing, the plaintiff argued that the intervening defendants should have been required to obtain a new variance due to the changes set forth in the modified design. Specifically, he argued that the intervening defendants had obtained the 2011 variance based on the flat roof design of the proposed residence and the "very limited" size of the area that would exceed the maximum building height set forth in the regulations, which was reflected in the intervening defendants' application for the 2011 variance and the plans submitted in support thereof. The plaintiff explained that the flat roof design was "part of their hardship,"[5] as they needed a small room at the top of the stairs to access the rooftop deck. The plaintiff argued that, under the modified plan for the proposed residence, the flat

---

[4] Specifically, on the modified plan, the zoning enforcement officer wrote: "Approved for zoning compliance for: const. of a el. two sty. one fam. D. w/ vehicle parking beneath & mech. attic; O.A. dims. 37'-7" X 51'-5" X 34'-1 5/8" H. The lowest horizontal structural member & all mechs. including the bot. of all duct wk. & wiring shall be const. above el. 16.1 N.A.V.D.; 51% of gd. level walls to remain open; proposed 1st fl. el. 18.0'+."

[5] The plaintiff further argued: "[T]he hardship that they claim is one they created. . . . [Y]ou cannot create your hardship to then claim to ask for a variance." As set forth previously, however, the plaintiff had no objection to the granting of the variance in 2011, and the board's decision to grant the 2011 variance in the first instance is not at issue in this appeal.

roof design was now a pitched roof design, and the area that "was a small room utilized to access the roof-top deck has turned into an almost [twenty-four] foot by [nineteen] foot floor, approximately 450 square feet."

James Wendt, the town's planning director, spoke at the hearing. He stated in relevant part: "I agree that there has been a change in the plan, there are two different architects, it's a different roof design. We have no quarrel with those facts as they were laid out by [the plaintiff]. Our position on this is the height relative to what the variance was granted has not changed. What has changed in the intervening nine years is the flood map has changed that requires a higher starting elevation . . . for the first floor which raised the house in absolute terms by a couple of feet. But in terms of the calculation of the midpoint of the height, the difference between what the permitted height is and what the variance was granted has not changed. So, the magnitude of the height variance that the board had granted, which was the variance that was approved in . . . however many years ago it was, nine or eleven years ago now, has remained the same. The design has changed, but the . . . magnitude of the difference in what the permitted height would be versus what the variance that was granted has not changed, even though . . . there was a change in the design of the style of the house. . . .

"[W]e did recognize that there are some changes to the plan as pointed out by [the plaintiff], but in our view we didn't think it was of a magnitude that warranted a new application to [the board]. That's really the long and short of it. . . . [T]he [regulation] changed that pushed the starting point of the house up a little bit, and they get credit for that under the regulations, but how height is calculated under the revised plan, the ultimate measurement of that height does not exceed the scope of the variance that had been previously

granted. It may be modestly larger in terms of the footprint of that third floor attic space that that variance applies to, but I don't argue with that part of the presentation. But we didn't think that changed the scope of the variance that was ultimately approved. So, that is why we went forward with the . . . issuance of that permit because we didn't believe it changed the scope of the . . . variance that was first approved."

The board also heard from Castelli, one of the intervening defendants, about the modifications to the design of the proposed residence. Castelli explained that she and Meller postponed construction of the proposed residence because the changes to the zoning regulations implemented after Hurricanes Irene and Sandy resulted in a long period of uncertainty about whether the design of the house had to be changed. Castelli further explained that they had to remove a deck from the design of the house because the house now needed to be built on stilts. In addition, because they lost 2000 square feet of the property, they redesigned the house to make it smaller, reducing each floor of the three-story house by approximately 100 square feet. The plaintiff agreed with Castelli that the footprint of the house was smaller, but he argued that the removal of the deck was then "padded . . . into [the] house."

Following the hearing, a majority of the board voted to deny the plaintiff's appeal. The board did not provide a formal, collective statement of reasons for its action. The plaintiff appealed from the board's decision to the trial court pursuant to General Statutes § 8-8.

In his appeal to the trial court, the plaintiff claimed that the board's decision upholding the issuance of the certificate of zoning compliance was illegal, arbitrary and an abuse of its discretion, and it was not supported by substantial evidence in the record. The intervening defendants subsequently intervened in the plaintiff's

appeal. The parties submitted briefs and supporting documentation, including, inter alia, the intervening defendants' application for the 2011 variance; the certificate of variance for the 2011 variance;[6] the minutes from the board's July 7, 2011 meeting,[7] at which it considered the intervening defendants' application for the 2011 variance; copies of the original and modified designs of the proposed residence; the transcript and minutes from the board's May 21, 2020 meeting, at which it considered the plaintiff's appeal from the issuance of the certificate of zoning compliance; and a copy of the regulations that were in effect at the time the certificate of zoning compliance was approved. The parties presented oral argument to the trial court, *O'Hanlan, J.*, on October 20, 2022, and June 29, 2023.

In a memorandum of decision dated January 3, 2024, the court concluded that the board properly upheld the issuance of the certificate of zoning compliance.[8] At the outset, the court determined that the maximum building height of the residence was 34.48 feet—which included 33.15 feet pursuant to § 11.7 of the regulations[9]

---

[6] In the present case, the document issued by the board and filed in the land records, certifying that a variance was granted, is labeled as a "notice of filing." The parties refer to this document as the certificate of variance, which is consistent with our case law. Accordingly, for ease of reference, we refer in this opinion to the notice of filing as the certificate of variance.

[7] The record does not contain a transcript from the board's July 7, 2011 meeting.

[8] The court noted that "[i]t is undisputed that [the intervening] defendants' dwelling has been built as per the plans subject to this appeal."

[9] Because § 11.7 of the regulations permitted a maximum building height of thirty feet plus "one foot of additional height . . . for every two (2) feet of vertical distance between the existing average grade and the base flood elevation," the court concluded that the intervening defendants were entitled to 3.15 feet of additional height pursuant to that regulation. The court reached this figure using a starting elevation of sixteen feet, with a BFE of fifteen feet plus one foot pursuant to the Connecticut State Building Code. Pursuant to the calculation set forth in § 11.7 of the regulations, the court determined that the distance between the existing average grade (9.7 feet) and the starting elevation (sixteen feet) was 6.3 feet, then divided that figure by two.

The plaintiff had raised numerous arguments before the trial court chal-

and 1.33 feet from the 2011 variance—and, therefore, the height of the proposed residence conformed to the regulations.[10] In concluding that the board properly took into account the 1.33 feet from the 2011 variance, the court rejected the plaintiff's arguments that (1) the variance was conditioned on the original flat roof design and the limited area that would exceed the maximum building height set forth in § 11.7 of the regulations, and (2) the variance was rendered moot by the amendment to § 11.7 of the regulations providing for an increased maximum building height. Finally, the court concluded that the board's decision was supported by substantial evidence in the record, specifically, Wendt's testimony[11] explaining that the magnitude of the height variance had not changed. Accordingly, the court dismissed the plaintiff's appeal. This appeal followed.

On appeal, the plaintiff claims that the 1.33 feet from the 2011 variance should not have been considered in the calculation of the maximum building height because (1) the conditions attached to that variance had not been satisfied, and (2) the variance was rendered moot by the 2013 amendment to § 11.7 of the regulations.

Before considering these claims, we recite certain well established principles. "A zoning enforcement officer acting on an application for a zoning permit has a

lenging the calculation of the maximum building height under § 11.7 of the regulations, including that § 11.7 does not recognize "fractional feet," and that the one extra foot from the Connecticut State Building Code should not be taken into consideration. On appeal to this court, the plaintiff does not challenge the trial court's application of the Connecticut State Building Code or its calculation of the maximum building height aside from its inclusion of the 1.33 feet from the 2011 variance.

[10] As set forth previously, the zoning enforcement officer approved the proposed residence with a height of 34 feet, 1.625 inches.

[11] "Our decisional law commonly refers to the 'testimony' offered at the public hearings of municipal land use agencies in this state without regard to whether it was offered under oath." *Parker* v. *Zoning Commission*, 209 Conn. App. 631, 669 n.38, 269 A.3d 157, cert. denied, 343 Conn. 908, 273 A.3d 694 (2022).

purely ministerial function. . . . If the application conforms to the requirements of the regulations, he has no discretion but to issue a permit. . . .

"[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board. . . . [T]he zoning board of appeals makes a de novo determination of the issue before it, without deference to the actions of the zoning enforcement officer. . . .

"[T]he board is endowed with liberal discretion and . . . its actions are subject to review by the courts only to determine whether they are unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts. . . . Upon an appeal from the board, the court must focus on the decision of the board and the record before it. . . .

"In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . If the trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board.

. . . If there is conflicting evidence in support of the zoning [board's] stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . Where, as here, the board does not state formally the reasons for its decision, the trial court must search the record for a basis for the board's decision." (Citations omitted; internal quotation marks omitted.) *Watson* v. *Zoning Board of Appeals*, 189 Conn. App. 367, 381–82, 207 A.3d 1067 (2019).

"At the same time, when a question of law is presented, such as the proper interpretation of a zoning regulation, our review is plenary." *Parker* v. *Zoning Commission*, 209 Conn. App. 631, 653, 269 A.3d 157, cert. denied, 343 Conn. 908, 273 A.3d 694 (2022). When our review is plenary, "we must decide whether [the court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Villages, LLC* v. *Enfield Planning & Zoning Commission*, 149 Conn. App. 448, 456, 89 A.3d 405 (2014), appeals dismissed, 320 Conn. 89, 127 A.3d 998 (2015).

I

The plaintiff first claims that the court improperly determined that no conditions were attached to the 2011 variance. Specifically, he contends that a review of the entire record demonstrates that the flat roof design and the "small area of height exceedance" were implied conditions attached to the 2011 variance. He further argues that, because the modified design submitted by the intervening defendants did not satisfy those conditions, the 1.33 feet from the 2011 variance should not have been considered by the zoning enforcement officer in issuing the certificate of zoning compliance. In response, the intervening defendants contend

that the trial court correctly concluded that no conditions were attached to the 2011 variance because, inter alia, the certificate of variance issued by the board and filed in the land records did not list any conditions.[12] We agree with the intervening defendants.

The following additional legal principles are relevant to our review of this claim. "[A] zoning board of appeals may . . . attach reasonable conditions to the grant[ing] of a variance. . . . Since variances allow uses forbidden by the regulations, the attachment of conditions to the granting of a variance alleviates the harm which might otherwise result. . . . Were it not for the conditions imposed by a board . . . variances might not be supportable as being in harmony with the general purpose and intent of the zoning ordinance. . . . Thus the variance and the attached conditions are inextricably linked, the viability of the variance being contingent upon the satisfaction of the conditions." (Internal quotation marks omitted.) *Anatra* v. *Zoning Board of Appeals*, 307 Conn. 728, 740–41, 59 A.3d 772 (2013).

"Just as when we employ a plenary standard of review over the Superior Court's interpretation of local land use regulations . . . we conclude that when a lower court interprets the terms of a variance or its conditions, our review likewise is plenary over that question of law." (Citation omitted.) *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 129 Conn. App. 275, 287, 19 A.3d 715 (2011); see also *Anatra* v. *Zoning Board of Appeals*, supra, 307 Conn. 738 (applying plenary review to claim involving interpretation of variance).

In the present case, the court determined that no conditions were attached to the 2011 variance. The court explained that the certificate of variance "contains a line labeled 'conditions' that was left blank." In addition, the 2011 plans were "conceptual" and labeled

---

[12] The board agrees with the intervening defendants and has adopted their brief in the present appeal.

"not for construction." Finally, the minutes from the board's July 7, 2011 meeting, at which it considered the intervening defendants' variance application, reflected that it granted another zoning application and specifically noted that that application was "granted with conditions," and separately set forth the conditions in the minutes. The board did not do the same with respect to the intervening defendants' variance.

The court also noted that our Supreme Court's decision in *Anatra* v. *Zoning Board of Appeals*, supra, 307 Conn. 728, on which the plaintiff relied in support of his argument, did not inform its decision on this issue because our Supreme Court in that case did not address whether the record should be consulted in order to determine whether restrictions or conditions have been attached to the granting of a variance "when there is no indication in the variance that approval was granted with conditions." Id., 730 n.1.

On appeal, the plaintiff continues to rely on *Anatra* v. *Zoning Board of Appeals*, supra, 307 Conn. 728.[13] The

---

[13] The plaintiff also argues, apart from his reliance on *Anatra*, that a "duty to adhere to implied conditions is codified and extended by the Fairfield Zoning Regulations," specifically § 2.37 of the regulations, which provides in relevant part that "[c]ompliance with any maps, documents, statements and stipulations submitted to and approved by the Commission or the Board of Appeals in connection with a . . . Variance . . . and any condition of such approval attached by the Commission or Board, shall be conditions for the issuance of a Certificate of Zoning Compliance by the Zoning Enforcement Officer." He contends that the zoning enforcement officer was required to "actively [search] for conditions" in the record pursuant to this provision. We decline to consider this issue, which was not distinctly raised before the trial court. See, e.g., *United Concrete Products, Inc.* v. *NJR Construction, LLC*, 207 Conn. App. 551, 579, 263 A.3d 823 (2021) ("Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked." (Internal quotation marks omitted.)).

plaintiff contends that, pursuant to *Anatra*, the court was required to consider "the entirety of the public record," including the intervening defendants' application for the 2011 variance, the accompanying plans, and the minutes from the board's July 7, 2011 meeting at which it considered the application, to determine whether any conditions were attached to the variance. He argues that these materials demonstrate that the flat roof design of the proposed residence and the limited size of the area that would exceed the maximum building height were conditions attached to the 2011 variance, and those conditions had not been satisfied by the modified plans submitted to the zoning enforcement officer. We are not persuaded.

In *Anatra*, our Supreme Court concluded that conditions attached to a variance "should be construed not only by examining the language contained in the certificate of variance, but by considering the entire public record, including the variance application, the accompanying plans and exhibits, the minutes or hearing transcript, and the record of decision." *Anatra* v. *Zoning Board of Appeals*, supra, 307 Conn. 747. In that case, however, unlike in the present case, the certificate of variance indicated that the variance was granted with conditions. Our Supreme Court explained: "Although the certificate of variance did not contain an express restriction on the addition of a conforming deck, the certificate provided that the building coverage and front and side yard variances had been granted 'to permit [the] existing structure to be replaced in the same location within 50 [feet] of the critical coastal resources *as presented at the hearing and as shown on the plans and the survey submitted.*' . . . Accordingly, the variance was subject to a condition that, by its very terms, could not be construed on the basis of the language in the certificate alone but required a review of the

administrative record to determine whether the proposed deck complied with the plans and survey submitted with the variance application in 2001." (Emphasis altered; footnote omitted.) Id., 753.

Our Supreme Court made clear that it was reviewing the administrative record to determine the full scope and details of the conditions imposed, rather than to determine whether a condition was attached to the variance in the first instance. See id., 747 ("it makes more sense to treat a certificate of variance, *which refers to conditions having been attached,* as a notice to all those searching the land records that further investigation should be undertaken by reviewing the administrative file" (emphasis added)); id., 749 ("[t]his conclusion is in accord with the principle that, *when the land records indicate that conditions have been attached to a variance,* due diligence requires a potential buyer of the property or other interested persons to investigate the public record in order to obtain a full understanding of the scope of the variance" (emphasis added)); see also id., 744 (looking to courts in other jurisdictions that have considered public record in "construing conditions" attached to variance). Our Supreme Court explicitly noted: "We do not address the issue of whether the record should be consulted in order to determine whether restrictions or conditions have been attached to the granting of a variance when there is no indication in the variance that approval was granted with conditions." Id., 730 n.1. Accordingly, *Anatra* does not control the issue raised in the present case, and its holding does not directly support the plaintiff's contention that the record must be consulted to determine whether the variance in the present case was granted with conditions.

In considering whether to consult the entire record to determine whether restrictions or conditions have been attached to the granting of the variance in the

present case, we are guided by the legal principles set forth in *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 129 Conn. App. 275.[14] In that case, this court held that the interpretation of a variance and its conditions should be interpreted in a manner consistent with statutory construction. Id., 286–87. "In matters of statutory interpretation, we are guided by General Statutes § 1-2z, which directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. A statute is ambiguous if it is susceptible to more than one plausible interpretation." (Internal quotation marks omitted.) *Stamford* v. *Commission on Human Rights & Opportunities*, *Office of Public Hearings*, 351 Conn. 298, 306, 330 A.3d 102 (2025).

In *R & R Pool & Patio, Inc.*, the trial court sought to define the phrase "fine furniture," as that term was set forth in a variance pertaining to the plaintiffs' property but was not defined in the town's zoning regulations or in the certificate of variance. *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 129 Conn. App. 276, 288. This court concluded that, "[i]f the undefined

---

[14] In *Anatra*, our Supreme Court noted that this court's holding in *R & R Pool & Patio, Inc.*, was "more limited" than this court's approach in previous decisions. *Anatra* v. *Zoning Board of Appeals*, supra, 307 Conn. 744. Specifically, in *L & G Associates, Inc.* v. *Zoning Board of Appeals*, 40 Conn. App. 784, 787–88, 673 A.2d 1146 (1996), and *Fleet National Bank* v. *Zoning Board of Appeals*, 54 Conn. App. 135, 137, 140–41, 734 A.2d 592, cert. denied, 250 Conn. 930, 738 A.2d 656 (1999), this court examined the entire public record, including the variance applications and board meeting minutes, to determine the scope of the variances. It is unclear from the facts and reasoning of those decisions, however, whether the certificates of variance in those cases referred to any conditions. See *L & G Associates, Inc.* v. *Zoning Board of Appeals*, supra, 787–88; *Fleet National Bank* v. *Zoning Board of Appeals*, supra, 137, 140–41; see also *Anatra* v. *Zoning Board of Appeals*, supra, 742–43.

words or terms are clear and unambiguous on their face, the interpretation of their meaning poses a question of law, which requires nothing more than looking to the certificate itself . . . ." Id., 287. In contrast, when "the undefined words or phrases [in a certificate of variance] are ambiguous or reasonably susceptible to multiple interpretations, a search for the intent of the board at the time it approved the variance is necessary to resolve that question . . . ." Id., 287–88. After noting that the phrase "fine furniture" contained ambiguity; id., 290; this court reviewed the record in that case, including the original application for a variance, the testimony at the hearing and the zoning board's deliberations, to define the meaning of that term. Id., 291–93, 296.

Applying those principles to the present case, we first turn our attention to the certificate of variance itself. In the section of the certificate entitled "Nature of Application," the certificate states in relevant part: "Section 11.7 to increase the dwelling height from 30 feet, proposing 31.33 feet, and Section 11.1.1 to permit to construct two dwellings on one parcel. Permission to remove two existing dwellings and construct two new dwellings." (Emphasis omitted.) On a line labeled "Plans Entitled," the certificate states: "Prepared by The Huntington Company, LLC, dated 2-2-10." The next line, labeled "Conditions," was left blank.

We conclude that, because the line designated for conditions was left blank and there is no other indication in the certificate of variance that approval was granted with conditions, the trial court properly concluded that no conditions were attached to the 2011 variance. We discern no ambiguities in the certificate of variance because it contains no language that reasonably could be construed as imposing a condition. The question of whether conditions were attached to the variance, therefore, "requires nothing more than looking to the certificate itself"; *R & R Pool & Patio, Inc.*

v. *Zoning Board of Appeals*, supra, 129 Conn. App. 287; and a review of the other materials in the administrative record, such as the variance application and the plans submitted in support thereof, is unnecessary. See, e.g., *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, supra, 351 Conn. 306 (in applying principles of statutory construction, if text of statute is clear and unambiguous, resort to extratextual evidence shall not be considered). Accordingly, the board properly considered the 2011 variance, even though the modified designs submitted by the intervening defendants did not have a flat roof design or a limited 128 square foot area that would exceed the maximum building height, because those were not conditions attached to the variance.

## II

The plaintiff also claims that the 1.33 feet from the 2011 variance should not have been considered in calculating the maximum building height because the 2011 variance was rendered moot by the 2013 amendment to § 11.7 of the regulations. Specifically, the plaintiff contends that the 2011 variance "no longer had any legal effect, as the height permitted under the 2011 variance was now allowed as of right." We are not persuaded.

At the outset, we briefly note that this claim presents a question of law, over which our review is plenary. See *Parker* v. *Zoning Commission*, supra, 209 Conn. App. 653; see also *International Investors* v. *Town Plan & Zoning Commission*, 344 Conn. 46, 59, 277 A.3d 750 (2022) (whether special permit was rendered void was question of law subject to plenary review); *Santarsiero* v. *Planning & Zoning Commission*, 165 Conn. App. 761, 772, 140 A.3d 336 (2016) ("[b]ecause the court . . . made conclusions of law in its memorandum of decision

[in this case], our review is plenary" (internal quotation marks omitted)).

In the present case, the trial court rejected the plaintiff's argument that the amendment to § 11.7 of the regulations rendered the 2011 variance moot, explaining that the plaintiff's argument "is not only contradicted by the plain language of General Statutes § 8-6 (b), but is also not supported by any statutory or regulatory authority that requires a renewal or the extinguishment of a variance based on amendments to regulations. The court cannot read language into the regulations or . . . § 8-6 (b). . . . Indeed, it would yield an unworkable result for property owners and municipalities if a landowner with a variance had to reapply to 'renew' variances each time a municipality's regulations were amended or each time a property owner reconstructed or remodeled the structure for which a variance applied." (Citations omitted; footnote omitted.)

We agree with the trial court. The plaintiff cites no authority, and we have found none, to support the proposition that a variance may be rendered moot by a subsequent amendment to the regulations.[15] Section 8-6, which governs a zoning board's authority to grant a variance, does not describe any limitations or restrictions placed on a variance once it is granted and recorded in the land records. Indeed, it provides in relevant part that "[a]ny variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the

---

[15] In addition to the lack of legal support for the plaintiff's argument, we also note that an amendment to the regulations does not necessarily alleviate the hardship for which the variance was sought. For instance, in the present case, although the maximum building height increased pursuant to the 2013 amendment to § 11.7 of the regulations, that increase simply accounted for the new base flood elevation that also went into effect in 2013. See Fairfield Zoning Regs., § 11.7.

property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance." General Statutes § 8-6 (b); see also *Amendola* v. *Zoning Board of Appeals*, 161 Conn. App. 726, 737, 129 A.3d 743 (2015) ("[t]he granting of a variance is no insignificant matter, as it runs with the land in perpetuity" (internal quotation marks omitted)). The plaintiff's argument that the amendment to the regulations effectively extinguished the 2011 variance ignores the language in § 8-6, which provides that variances run with the land. As aptly noted by the trial court in the present case, "it would yield an unworkable result for property owners and municipalities if a landowner with a variance had to reapply to renew variances each time a municipality's regulations were amended . . . ." (Internal quotation marks omitted.)

Thus, the plaintiff has not demonstrated that the 2011 variance was rendered moot, or no longer had any legal effect, by virtue of the amendment to § 11.7 of the regulations.[16] Accordingly, the 2011 variance properly was

---

[16] A similar issue has been addressed in the context of the justiciability of an appeal. In *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 600 A.2d 757 (1991), our Supreme Court concluded that subsequent regulatory changes did not render a zoning appeal moot because, pursuant to General Statutes § 8-2h (a), a zoning application must be considered under the zoning regulations in effect on the date it was filed. Id., 540–41. Our Supreme Court explained that § 8-2h (a) legislatively overruled this court's decision in *Johnson* v. *Zoning Board of Appeals*, 2 Conn. App. 24, 475 A.2d 339, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984), cert. denied, 471 U.S. 1066, 105 S. Ct. 2141, 85 L. Ed. 2d 498 (1985), which held that a zoning appeal had become moot by virtue of subsequent regulatory amendments. *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, supra, 540–41; see *Johnson* v. *Zoning Board of Appeals*, supra, 2 Conn. App. 26–27 (An appeal to the trial court "was properly dismissed as moot since the zoning variance has been superseded by a subsequent amendment to the zoning regulations which permit the use as of right. When present regulations permit the use, the plaintiff gains nothing by his action to set aside the granting of a variance which the landowner no longer needs. In a zoning appeal the court is to take the law

considered in calculating the maximum building height of the intervening defendants' proposed residence. The court, therefore, properly dismissed the plaintiff's appeal from the board's decision denying the plaintiff's appeal from the issuance of the certificate of zoning compliance by the town's zoning enforcement officer.

The judgment is affirmed.

In this opinion the other judges concurred.

as it exists at the time of the review of the zoning decision complained of. . . . There is no practical relief which could follow were the plaintiff's appeal of the zoning variance to be sustained." (Citation omitted.)); see also *Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 318, 612 A.2d 778 (explaining that § 8-2h (a) "legislatively overruled" *Johnson*, and "a challenge to commission action no longer is rendered moot by a subsequent change in the applicable zoning laws or regulations"), cert. denied, 223 Conn. 923, 614 A.2d 824 (1992). Given that an appeal from the granting of a variance is not rendered moot by virtue of subsequent regulatory amendments, and a reviewing court may still afford practical relief related to that variance, it follows that subsequent regulatory amendments do not render a variance moot for purposes of its future use.